Bryan L. **MYLER**, Appellant,

v.

Edward J. **DERWINSKI**, Secretary of Veterans Affairs, Appellee.

No. 90–1098.

United States Court of Veterans Appeals.

Argued Oct. 15, 1991.

Decided Nov. 19, 1991.

Joseph A. Violante, Washington, D.C., for appellant.

Michael Butler, with whom Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on· the brief, for appellee.

Before FARLEY, MANKIN and IVERS, Associate Judges.

FARLEY, Associate Judge:

In a decision on August 18, 1988, the Board of Veterans' Appeals (Board or BVA) ruled that a gunshot wound sustained by the veteran on November 5, 1950, resulted in injuries to two separate and distinct muscle groups and that therefore a disability rating of 30% was warranted. The narrow issue presented in this appeal is whether the veteran's current 30% disability rating should be made retroactive to 1953. We conclude that the failure of the rating board in 1953 to assign a disability of at least a moderate degree to muscle group XIII was a "clear and unmistakable error" pursuant to 38 C.F.R. § 3.105(a) (1991). Accordingly, the BVA decision of June 7, 1990, is reversed and the matter is remanded with instructions that the veteran's 30% rating be given an effective date of August 18, 1953.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Bryan L. Myler, served on active duty from January 26, 1949, to June 18, 1952. The service medical records show that on November 5, 1950, he was wounded in the right thigh by enemy fire. R. at 23 ("thru & thru GSW in anterolateral thigh"); R. at 32, 33. A November 3, 1953, VA medical examination found that:

> Penetrating GSW, right thigh.... [R]ight leg with residuals of penetrating GSW, right mid thigh, without atrophy, nerve, or vessel injury.... Apparently entered at the lower border of the right hamstring group, coursed anteriorly thru the lateral border of the quadraceps [sic] group at mid rt. thigh. No depression, no evidence of muscle atrophy, no evidence of nerve or vessel injury, no deformity.... Small coin sized scar, lateral posterior, mid ⅓ part of right thigh. Also a coin sized scar at anterior mid third of right thigh at lateral ball border of the quadraceps [sic]. No fixation, depression in either area. No tenderness. No depression. Function, right thigh muscle not impaired by GSW. No nerve or vessel injury.

R. at 66–67. On November 24, 1953, appellant received a 10% rating for a gunshot wound to his right leg; "PENETRATING GSW RIGHT THIGH, HEALED, MUS GP. XIV, MOD." R. at 69.

In 1987 appellant filed a claim for an increased rating, and in January 1988 he underwent a VA medical examination. R. at 79. The examiner reported:

> Examination of the right leg revealed a ½ cm. round entrance wound overlying the posterior thigh and a corresponding 1 cm. round well healed exit wound overlying the anterolateral aspect of the thigh.

*Id.* On August 18, 1988, the BVA awarded him an increase from 10% to 30% for the

residuals of a gunshot wound of the right thigh. In doing so, the Board stated:

> The clinical evidence, in particular, the most recent examination of January 1988, persuades us that the veteran's gunshot wound resulted in injury to two muscle groups, XIII and XIV. The scars, as noted on recent examination, indicate a through and through wound. Consistent with the clinical findings and the provisions of 38 C.F.R. § 4.55 and 4.72 regarding principles of combined ratings, we conclude the injuries to muscle groups XIII and XIV were moderate and should be combined to one rating for a moderately severe injury. This warrants a rating of 30 percent.

*Bryan L. Myler*, BVA 825334, at 4–5 (Aug. 18, 1988); R. at 112–13.

By letter dated September 7, 1988, to the Veterans' Administration (now the Department of Veterans Affairs) (VA) Regional Office (RO), appellant's representative requested that the 30% rating be made retroactive to 1953 on the ground that there had been "clear and unmistakable error" committed in the rating of November 24, 1953:

> The error consists of the Rating Board's failure to adequately apply the provisions of 38 C.F.R. 4.55. The 11-3-53 VA compensation examination report specifically refers to a through and through muscle injury of two muscles within the same anatomical region....
>
> Proper application of the provisions of 38 C.F.R. 4.55(a) would allow the assignment of the 30% evaluation from 8–18–53, the effective date of service connection.

R. at 114–15.

On October 18, 1988, the RO adjudication officer wrote a letter to the Director of the VA Compensation and Pension Service which concluded that there had indeed been "clear and unmistakable error" committed in the 1953 rating decision and recommended that appellant be granted retroactive benefits. R. at 120–21. The Director responded in a letter dated February 6, 1989, which disapproved the adjudication officer's recommendation and thus denied the claim for retroactive benefits. R. at 122. The veteran's representative initiated an appeal of the denial by submitting a Notice of Disagreement dated March 28, 1989, which was received by the RO on March 29, 1991. R. at 123–24.

The BVA on June 7, 1990, ruled there was no clear and unmistakable error in the 1953 rating decision. The Board noted that any determination of whether a clear and unmistakable error had been committed must be based not upon evidence available in 1988 or 1990, but exclusively upon the evidence of record at the time of the rating action in 1953. The Board wrote:

> In this case, the service medical records and the VA examination in 1953 do not show with measurable precision the actual degree of muscle damage to either muscle group. No functional impairment associated with the wound was described on the examination. One may reasonably argue that there was no more than slight injury to one or both muscle groups when the description of the wound in 1953 is considered. The point is that how much injury occurs to a muscle group is a matter of judgment. It was not patent and demonstrable error to have found as the agency of original jurisdiction did in 1953 that there was not disability consistent with more than moderate injury to one muscle group based on the evidence then of record.
>
> In fact, the Board of Veterans [sic] Appeals, in granting an increase in 1988 did so by relying heavily on the clinical findings reported on the VA examination conducted in 1988. On that examination, the wounds and residual scars were described differently than that in 1953. The current description of residuals suggested an increase in pathology.

*Bryan L. Myler*, BVA 90–18296, at 6 (June 7, 1990).

The Board concluded that the 1988 decision finding damage to two muscle groups was a matter of judgment and that in 1988, the BVA could also have tenably found that the evidence indicated moderate injury only to muscle group XIV, and not to group XIII. Appellant filed an appeal with

this Court on October 3, 1990. Oral argument was held on October 15, 1991.

## II.

### ANALYSIS

■ As we have said in *Thompson v. Derwinski*, 1 Vet.App. 251 (1991), ratings decisions are final and claims cannot be reopened without new and material evidence. An exception to this rule is when it is demonstrated that the VA committed "clear and unmistakable error" in the original decision. "Previous determinations on which an action was predicated, including decisions of service connection, degree of disability ... will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended." 38 C.F.R. § 3.105(a) (1991). Such error has been described as the failure by the VA to apply or observe the requirements of a regulation or statute prejudicial to the veteran, *Bentley v. Derwinski*, 1 Vet.App. 28, 31 (1990); *Akins v. Derwinski*, 1 Vet.App. 228 (1991), and thus qualifies as administrative error under 38 U.S.C. § 503(a) (formerly § 210(c)(2)). *Thompson*, at 253. A difference of opinion as to the facts or a disagreement with the original rating and its interpretation of the facts has been held not to be the type of administrative error reversible under 38 C.F.R. § 3.105(a). *Id.*

■ The distinction between a claim reopened based upon new and material evidence and a decision overturned on the ground of clear and unmistakable error may be significant indeed because, in the former instance, the effective date is "the date of receipt of the [reopened] claim or the date entitlement arose, *whichever is later.*" 38 C.F.R. § 3.400 (1991) (emphasis added). However, "a reversal of a prior decision on the grounds of clear and unmistakable error has the same effect as if the corrected decision had been made on the date of the reversed decision." 38 C.F.R. § 3.105(a) (1991).

In this case, there is no disagreement that the veteran sustained a through and through gunshot wound on November 5, 1950. Nor is there disagreement that the bullet "[a]pparently entered at the lower border of the right hamstring group, coursed anteriorly thru the lateral border of the quadraceps [sic] group at mid rt. thigh." R. at 66. Therefore, there is no difference of opinion as to the facts and the question to be resolved is whether there was a clear and unmistakable error in the application of the governing regulation to these agreed-upon facts. We conclude that there was such an error.

The Schedule for Rating Disabilities in existence in 1953 provided that a "through and through injury, with muscle damage, is always rated at least a moderate injury, for each group of muscles damaged." Schedule for Rating Disabilities, notes, 44–45 (1945) (currently 38 C.F.R. § 4.72 (1991)). A "through and through" wound by a "single bullet or small shell or shrapnel fragment" was to be rated as of at least moderate degree of disability. 38 C.F.R. § 4.17(2) (1945) (currently 38 C.F.R. § 4.56(b) (1991)). Unquestionably, the bullet that tore through this veteran's thigh passed through two muscle groups, Group XIII (posterior thigh group, which includes the hamstring complex) and Group XIV (anterior thigh group). R. at 66, 79. Yet, despite this clear and undisputed evidence of record, the rating board assigned a rating only for the disability in "MUS GP. XIV". R. at 69. No rating was assigned to muscle Group XIII, notwithstanding the regulatory guidance.

In 1953, this veteran was entitled, on the basis of evidence then before the Board, to a rating "of at least moderate degree" (38 C.F.R. § 4.17(2) (1945)) of disability for the "through and through" gunshot wound to muscle Group XIII. The failure to assign such a rating was a clear and unmistakable error. Moreover, in 1953, as in the present, when there were injuries to more than one muscle group in the same anatomical area, the ratings were not merely combined. Instead, 38 C.F.R. § 4.16(1) (1945) (currently 38 C.F.R. § 4.55(a) (1991)) provided that in the event of injuries to muscle groups in the same anatomical regions "the rating

for the major group affected will be elevated from moderate to moderately severe ... according to the severity of the aggregate impairment of function of the extremity." A moderate degree of disability of both a posterior thigh injury, muscle Group XIII, and an anterior thigh injury, muscle Group XIV, each was awarded a 10% rating. However, the same schedule provided that the elevation of the rating of the injury to either muscle group from "moderate" to "moderately severe" degree of disability resulted in an award of 30%. Schedule for Rating Disabilities, Diagnostic Code 5313, 5314 (1945) (currently 38 C.F.R. § 4.73, Diagnostic Code 5313, 5314 (1991)).

## III.

### CONCLUSION

In its decision of August 18, 1988, the BVA properly applied the regulations to the facts of this case and awarded this veteran a disability rating of 30%. The failure of the rating board to have done the same thing in its rating of November 24, 1953, was "clear and unmistakable error". 38 C.F.R. § 3.105(a). Therefore, we REVERSE the BVA decision of June 7, 1990, which upheld the VA's denial of "clear and unmistakable error" and we REMAND with instructions that the veteran's rating of 30% be given "the same effect as if the ... decision had been made on [November 24, 1953]." 38 C.F.R. § 3.105(a) (1991).

*It is so Ordered.*