(Slip Opinion) OCTOBER TERM, 2021 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GEORGE *v.* McDONOUGH, SECRETARY OF VETERANS AFFAIRS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 21–234. Argued April 19, 2022—Decided June 15, 2022

When petitioner Kevin George joined the Marine Corps in 1975, he did not disclose his history of schizophrenic episodes, and a medical examination noted no mental disorders. After George suffered an episode during training, the Marines medically discharged him. George then applied to the Department of Veterans Affairs under 38 U. S. C. §1110 for veterans' disability benefits based on his schizophrenia. A regional office of the VA denied George's claim, and the VA's Board of Veterans' Appeals denied his appeal in 1977.

In 2014, George asked the Board to revise its final decision. When the VA denies a benefits claim, that decision generally becomes "final and conclusive and may not be reviewed by any other official or by any court" after the veteran exhausts the opportunity for direct appeal. §511(a); see §7104(a). But George sought collateral review under a statutory exception allowing a veteran to seek revision of a final benefits decision at any time on grounds of "clear and unmistakable error." §§5109A, 7111; see 38 CFR §§3.105, 20.1400–20.1411. In particular, he claimed that the Board clearly and unmistakably erred by applying a later invalidated regulation to deny his claim for benefits without holding the VA to its burden of proof to rebut the statutory presumption that he was in sound condition when he entered service.

The Board denied George's claim for collateral relief, and the Veterans Court affirmed. The Federal Circuit also affirmed, concluding that the application of a later invalidated regulation does not fall into the narrow category of "clear and unmistakable error" permitting revision of a final decision under 38 U. S. C. §§5109A and 7111.

*Held*: The invalidation of a VA regulation after a veteran's benefits decision becomes final cannot support a claim for collateral relief based on

clear and unmistakable error.  Pp. 5–12.

  (a) This case turns on the meaning of the 1997 statute subjecting a final veterans' benefits decision to collateral review on grounds of "clear and unmistakable error."  111 Stat. 2271 (38 U. S. C. §§5109A, 7111).  No statute defines the term "clear and unmistakable error," but the modifiers "clear" and "unmistakable" as well as the statutory structure suggest a narrow category.  A robust regulatory backdrop fills in the details.  Where Congress employs a term of art "'"obviously transplanted from another legal source,"' it '"brings the old soil with it."'"  *Taggart* v. *Lorenzen*, 587 U. S. ___, ___.  That principle applies here.  The Court agrees with the Federal Circuit that Congress "codif[ied] and adopt[ed] the [clear-and-unmistakable-error] doctrine as it had developed under" decades of prior agency practice.  *Cook* v. *Principi*, 318 F. 3d 1334, 1344 (en banc).  That history reveals that this category of error does not encompass a subsequent "change in law . . . or a change in interpretation of law."  38 CFR §3.105 (Cum. Supp. 1963).  And the invalidation of a prior regulation constitutes a "change in interpretation of law" under historical agency practice.  Defined by this regulatory history, the statutory term "clear and unmistakable error" does not encompass a claim like George's.  Pp. 5–8.

  (b) In response, George argues that the VA has distorted the history of agency practice that the 1997 statute codified.  But across a century of review for clear and unmistakable error, George can muster only one uncertain outlier case sustaining a claim that arguably resembles his, which does not move the mountain of contrary regulatory authority.  He alternatively argues that the VA is wrong to call a later decision invalidating a regulation a "change in interpretation of law."  But that is a perfectly natural use of language.  George tries to bolster his position by invoking cases explaining that a judicial decision states what the statute "*always* meant," *Rivers* v. *Roadway Express, Inc.,* 511 U. S. 298, 313, n. 12, and an unauthorized regulation is a "'nullity,'" *Dixon* v. *United States,* 381 U. S. 68, 74.  But those general principles do not disturb the conclusion that the Board's application of a then-binding regulation is not the kind of "clear and unmistakable error" for which collateral relief is available under §§5109A and 7111.  And that longstanding VA approach is consistent with the general rule that the new interpretation of a statute can only retroactively affect decisions still open on direct review.

  George also leans on what he describes as the plain meaning of the words "clear and unmistakable error."  But as he concedes elsewhere, the real question is not what might be called clear and unmistakable error in the abstract, but what the prevailing understanding of this term of art was when Congress codified it.  The fact that Congress did not expressly enact the specific regulatory principle barring collateral

Syllabus

relief for subsequent changes in interpretation does not mean that the principle did not carry over to the statute. Statutory "silence" on the details of prior regulatory practice indicates that Congress "left the matter where it was pre-[codification]." *Kucana* v. *Holder,* 558 U. S. 233, 250. Pp. 8–12.

991 F. 3d 1227, affirmed.

BARRETT, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, KAGAN, and KAVANAUGH, JJ., joined. SO-TOMAYOR, J., filed a dissenting opinion. GORSUCH, J., filed a dissenting opinion, in which BREYER, J., joined, and in which SOTOMAYOR, J., joined as to all but Part II–C.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 21–234

KEVIN R. GEORGE, PETITIONER *v.* DENIS R. MCDONOUGH, SECRETARY OF VETERANS AFFAIRS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[June 15, 2022]

JUSTICE BARRETT delivered the opinion of the Court.

Veterans may claim benefits for disabilities connected to their military service subject to statutory and regulatory requirements. When the Department of Veterans Affairs (VA) denies a benefits claim, that decision generally becomes final after the veteran exhausts the opportunity for direct appeal. But a statutory exception permits the veteran to seek collateral review at any time on grounds of "clear and unmistakable error." We must decide whether that exception allows relief from a VA decision applying an agency regulation that, although unchallenged at the time, is later deemed contrary to law. We hold that it does not.

I

A

"The law entitles veterans who have served on active duty in the United States military to receive benefits for disabilities caused or aggravated by their military service." *Shinseki* v. *Sanders*, 556 U. S. 396, 400 (2009); see 38 U. S. C. §1110. A veteran seeking such benefits must first file a claim with the VA. §5101(a)(1)(A). A regional office

of the VA then determines whether the veteran satisfies all legal prerequisites, including the requirement that military service caused or aggravated the disability. §511(a); see 38 CFR §3.100(a) (2021). To that end, the statute governing wartime service imposes a "[p]resumption of sound condition": If a veteran's disability was not noted at the time of entry into service, then the veteran is presumptively entitled to benefits unless the VA shows by a heightened burden of proof that the disability "existed before . . . and was not aggravated by such service." 38 U. S. C. §1111. After applying this and other statutory and regulatory requirements, the regional office issues an initial decision granting or denying benefits. §§511(a), 5104(a).

A veteran dissatisfied with this decision may challenge it through several layers of direct review. As a general rule, the veteran may appeal within one year to the VA's Board of Veterans' Appeals (Board). §§7105(b)(1), 7104(a). If the Board also denies relief, the veteran may seek further review outside the agency. Such review was once limited to constitutional and certain statutory claims, but since 1988 Congress has generally allowed veterans 120 days to appeal any Board decision to the Court of Appeals for Veterans Claims (Veterans Court). See *Henderson* v. *Shinseki*, 562 U. S. 428, 432, and n. 1 (2011); §§7252(a), 7261(a), 7266(a). A veteran dissatisfied with that court's decision may seek review of any legal issue in the Federal Circuit and ultimately in this Court. §7292; 28 U. S. C. §1254(1).

After this direct appeal process, the benefits decision generally becomes "final and conclusive and may not be reviewed by any other official or by any court." 38 U. S. C. §511(a); see §7104(a). Still, the veteran enjoys a few limited options for seeking collateral review in exceptional circumstances. *E.g.,* §5108(a) (supplemental claim based on new and relevant evidence); §503(a) (discretionary relief based on administrative error); §5110(g) (increase of benefits based on subsequent liberalizing legal change).

This case concerns one such exception to finality: At any time, a veteran may ask the Board or regional office to revise a final benefits decision on grounds of "clear and unmistakable error." §5109A (regional office); §7111 (the Board); 38 CFR §§3.105, 20.1400–20.1411 (2021). This form of collateral review was first adopted by regulation roughly 100 years ago. Since at least 1928, the VA and its predecessor agencies have allowed revision of an otherwise final decision when "obviously warranted by a clear and unmistakable error." Veterans' Bureau Reg. No. 187, pt. 1, §7155 (1928); see 38 CFR §3.105(a) (Cum. Supp. 1963) ("Previous determinations . . . will be accepted as correct in the absence of clear and unmistakable error"). In 1997, Congress codified this form of review in the statute we interpret today. 111 Stat. 2271.

### B

Kevin George joined the Marine Corps in 1975 after experiencing multiple schizophrenic episodes. He did not initially disclose that history, and a medical examination noted no mental disorders at the time he entered service. But less than a week into training, George had another episode and was hospitalized. A few months later, the Navy's Central Physical Evaluation Board found that his schizophrenia made him unfit for duty and was not aggravated by service. App. to Brief for Petitioner 12a–15a. George was then medically discharged.

Later that year, George applied for veterans' disability benefits based on his schizophrenia. A VA regional office denied his claim after concluding that his condition predated his military service and was not aggravated by it. The Board agreed and denied George's appeal in 1977. In so ruling, neither the regional office nor the Board expressly discussed the VA's burden of proof under the presumption of sound condition.

In 2014, George asked the Board to revise that final decision on grounds of "clear and unmistakable error." 38 U. S. C. §7111. In particular, he claimed that the Board erred by applying a later invalidated regulation to deny his claim for benefits without holding the VA to its full burden of proof to rebut the statutory presumption of sound condition. For more than 40 years, including George's time in service, a VA regulation provided that the agency could rebut the presumption simply by showing, according to a heightened burden of proof, that a disability predated service. See 26 Fed. Reg. 1580 (1961); 38 CFR §3.304(b) (1976). In 2003, however, the VA concluded that this regulation conflicted with the statute, which it now understood to require an additional showing (by the same burden of proof): that the veteran's condition was not later aggravated by service. VA Op. Gen. Counsel Precedent (VA Op.) 3–2003 (July 16, 2003). The VA recognized that it seemed "illogical" to require an additional showing with "no obvious bearing upon the presumed fact of whether the veteran was in sound condition when he or she entered service." *Id.,* at 8. But it explained that the statutory text nonetheless "compel[led]" this reading. *Ibid.* Based on this about-face, the VA confessed error in a pending case applying the regulation, and the Federal Circuit agreed that this "difficult to parse" and "somewhat self-contradictory" statute rendered the regulation "incorrect." *Wagner* v. *Principi*, 370 F. 3d 1089, 1093, 1097 (2004). The VA ultimately amended the regulation to resolve the issue going forward. 70 Fed. Reg. 23027 (2005).

The Board denied George's claim for collateral relief, and the Veterans Court affirmed. The Federal Circuit also affirmed, concluding that the application of a later invalidated regulation does not fall into the narrow category of "clear and unmistakable error" permitting revision of a final decision under 38 U. S. C. §§5109A and 7111. 991 F. 3d 1227 (2021). We granted certiorari. 595 U. S. ___ (2022).

## II

## A

This case turns on the meaning of the 1997 statute subjecting a final veterans' benefits decision to collateral review on grounds of "clear and unmistakable error." 111 Stat. 2271 (38 U. S. C. §§5109A, 7111). Neither this statute nor any other defines this term—indeed, it appears nowhere else in the entire United States Code. The modifiers "clear" and "unmistakable" indicate that this is a narrow category excluding some forms of error cognizable in other contexts. The statutory structure similarly suggests a narrow category because this form of review functions as a limited exception to finality, in contrast to the broad provision of one direct appeal for "[a]ll questions" in a case. §7104(a). But beyond those general contours, the statute itself does not identify the specific ways in which this category is narrower than garden-variety "error."

Fortunately, a robust regulatory backdrop fills in the details. Where Congress employs a term of art "'"obviously transplanted from another legal source,"' it '"brings the old soil with it."'" *Taggart* v. *Lorenzen*, 587 U. S. \_\_\_, \_\_\_ (2019) (slip op., at 5). That principle applies here. In 1997, Congress used an unusual term that had a long regulatory history in this very context. It enacted no new "definition" or other provision indicating any departure from the "same meaning" that the VA had long applied. *Hall* v. *Hall*, 584 U. S. \_\_\_, \_\_\_ (2018) (slip op., at 13). We therefore agree with the Federal Circuit that Congress "codif[ied] and adopt[ed] the [clear-and-unmistakable-error] doctrine as it had developed under" prior agency practice. *Cook* v. *Principi*, 318 F. 3d 1334, 1344 (2002) (en banc). That longstanding VA practice reveals several respects in which the clear-and-unmistakable category is a "very specific and rare kind of error" narrower than error *simpliciter*. 38 CFR §20.1403(a).

Most important for present purposes, the history reveals

that this category of error does not encompass a subsequent "change in law . . . or a change in interpretation of law." 38 CFR §3.105 (Cum. Supp. 1963). And for good reason: During the many years when clear and unmistakable error was purely a creature of regulation, the governing statutes generally did not allow "[n]ew or recently developed facts or changes in the law" to "provide a basis for revising a finally decided case." *Russell* v. *Principi*, 3 Vet. App. 310, 313 (1992) (en banc) (citing 38 U. S. C. §§5108, 7104). To stay within that statutory constraint, authorities dating back to 1928 confirm that "[a] determination that there was 'clear and unmistakable error' must be based on the record and the law *that existed at the time of the prior [VA] decision.*" 3 Vet. App., at 314 (emphasis added); see 38 CFR §20.1403(b) (similar); Veterans' Bureau Reg. No. 187, pt. 1, §7155 (requiring "clear and unmistakable error shown by the evidence in file at the time the prior decision was rendered"). So, for example, the VA's failure to apply an existing regulation to undisputed record evidence could constitute clear and unmistakable error. *E.g., Myler* v. *Derwinski*, 1 Vet. App. 571, 574–575 (1991). But a subsequent legal change could not, because "only the 'law that existed at the time' of the prior adjudication . . . can be considered" in this posture. *Damrel* v. *Brown*, 6 Vet. App. 242, 246 (1994). Or as the Veterans Court summed up, shortly before the enactment of the 1997 statute: A "new interpretation of law . . . from a case decided in 1993 could not possibly be the basis of [clear and unmistakable] error in 1969," as "a simple recitation of the time sequence" should "make . . . clear." *Berger* v. *Brown*, 10 Vet. App. 166, 170 (1997).

The invalidation of a prior regulation constitutes a "change in interpretation of law" under historical agency practice. Drawing on decades of history, the VA succinctly explained nearly 30 years ago that review for clear and unmistakable error provides "no authority . . . for retroactive

payment of benefits when," as in this case, a court later "invalidates a VA interpretation or regulation" after a benefits decision becomes final. VA Op. 9–94, ¶6, p. 5 (Mar. 25, 1994). Under this practice and the statute codifying it, the Board is instead simply "performing its assigned task when it applies a regulation as promulgated by the [VA]," because that regulation legally binds agency adjudicators. VA Op. 25–95, ¶4, p. 2 (Dec. 6, 1995); see 38 U. S. C. §7104(c) ("The Board shall be bound in its decisions by the regulations of the Department"). To be sure, when a previously applied regulation is later invalidated, relief may be warranted for "error" in a case still on direct appeal. *E.g., Wagner*, 370 F. 3d, at 1092, 1097. But on collateral review of a final decision, the more limited category of "[c]lear and unmistakable error does not include the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation." 38 CFR §20.1403(e).[1] The applicability of this principle does not depend on the reason why the agency changed course: A change based on the conclusion that a prior interpretation was wrong is still a changed interpretation.

Defined by this regulatory history, the statutory term "clear and unmistakable error" does not encompass a claim like George's. When the Board decided George's appeal in 1977, it followed the then-applicable 1961 regulation, as it was statutorily obligated to do. See 38 U. S. C. §7104(c). Decades later, the VA and the Federal Circuit rejected that

_____

[1] As should be clear from our explanation, the principal dissent is wrong to attribute to the Court the view that an agency decision in these circumstances is "infected by no error of any kind." *Post,* at 4 (opinion of GORSUCH, J.). The issue in this case is the distinction between "errors" cognizable on direct appeal and *clear and unmistakable errors* cognizable on collateral review. Throughout his opinion, JUSTICE GORSUCH elides that distinction.

regulation based on a new interpretation of the "sound con-
dition" provision. We express no view on the merits of that
change in interpretation, which are not before us. But be-
cause it *is* a change, it cannot support a claim of clear and
unmistakable error in the Board's routine 1977 application
of the prior regulation. Put differently, the correct applica-
tion of a binding regulation does not constitute "clear and
unmistakable error" at the time a decision is rendered, even
if that regulation is subsequently invalidated.

### B

### 1

George offers several responses. He generally concedes
the premise that the 1997 statute codified the longstanding
regulatory practice defining "clear and unmistakable er-
ror." He takes issue primarily with the conclusion that this
practice forbids his claim. In George's view, the VA has
"distorted" its own history by glossing over a handful of
"pre-legislation Veterans Court opinions" that he claims
"point in [his] direction." Brief for Petitioner 26, 41. But
across a century of review for clear and unmistakable error,
George can muster only one case sustaining a claim that
arguably resembles his. See *Look* v. *Derwinski*, 2 Vet. App.
157 (1992) (approving collateral relief on two grounds, in-
cluding a later invalidated regulation, without discussing
the change-in-interpretation principle). And even that case
is ambiguous, as portions of the opinion may instead "sug-
gest that the [subsequent] invalidation of regulations does
*not* have retroactive effect in 'finally' disallowed claims."
VA Op. 9–94, ¶5, p. 4 (emphasis added) (citing *Look*, 2 Vet.
App., at 164). Regardless, the case remains an outlier that
"no court has cited" on this point "[i]n the 30 years since,"
as the Government notes without rebuttal from George.
Brief for Respondent 38.

This is thin stuff. One uncertain outlier does not come

close to moving the mountain of contrary regulatory authority. See *supra,* at 5–7. When we say that a statute adopts a term of art, we mean that it captures "the state of [a] body of law," not every errant decision of arguable relevance. *Federal Republic of Germany* v. *Philipp*, 592 U. S. \_\_\_, \_\_\_ (2021) (slip op., at 9). Even if George could pluck from the crowd a few stray decisions pointing his way, that would not show a "'settled' meaning" that we can infer "Congress had . . . in mind when it enacted" this statute. *Return Mail, Inc.* v. *Postal Service*, 587 U. S. \_\_\_, \_\_\_ (2019) (slip op., at 15). Instead, the mainstream of agency practice settles that a clear-and-unmistakable-error claim cannot rest on a subsequent change in interpretation.

George alternatively argues that the VA erred in applying this principle to his situation. In his view, it is wrong to describe a later decision invalidating a regulation as a "change in interpretation of law." But we think that is a perfectly natural way to characterize a decision announcing a new reading of a statute—much as the VA and Federal Circuit did in the decisions on which George now relies. VA Op. 3–2003, ¶¶3, 8, pp. 2, 5 (adopting a new "interpretation" to replace the prior "interpretation reflected in VA's regulations"); *Wagner*, 370 F. 3d, at 1092 (discussing that "change in agency interpretation"). We have occasionally used similar language ourselves. *E.g., Gonzalez* v. *Crosby*, 545 U. S. 524, 536–537 (2005) (referring to "[t]he change in the law worked by" our precedent "interpret[ing] the AEDPA statute of limitations"). As the Federal Circuit has explained, a lack of "accuracy" in a prior statutory interpretation "does not negate the fact that" it *is* an "initial interpretation." *Jordan* v. *Nicholson*, 401 F. 3d 1296, 1298 (2005). In short, a misinterpretation is still an interpretation, and a correction of that interpretation is a change. So the VA's application of the change-in-interpretation label to claims like George's hardly reflects an "atypical" use of language, despite his arguments to the contrary. Brief for Petitioner 18.

Ordinary language aside, George tries to bolster his position with analogies to precedent from other contexts. He invokes an array of cases explaining that a judicial decision states what the statute "*always* meant," *Rivers* v. *Roadway Express, Inc.*, 511 U. S. 298, 313, n. 12 (1994), and an unauthorized regulation is a "'nullity,'" *Dixon* v. *United States*, 381 U. S. 68, 74 (1965). True enough. Those general principles, however, do not dispose of the issue before us. Assume George is right that the "sound condition" provision always required the VA to show that the veteran's condition was not later aggravated by service and that the 1961 regulation conflicted with that requirement. We would still have to decide whether the Board's application of that binding regulation is the kind of "clear and unmistakable error" for which collateral relief is available under 38 U. S. C. §§5109A and 7111. For the reasons we have explained, it is not.

And while George suggests otherwise, there is nothing incongruous about a system in which this kind of error—the application of a since-rejected statutory interpretation—cannot be remedied after final judgment. On the contrary, and as the lower courts have explained, the VA's longstanding approach is consistent with the general rule that "[t]he new interpretation of a statute can only retroactively [a]ffect decisions still open on direct review." *Disabled American Veterans* v. *Gober*, 234 F. 3d 682, 698 (CA Fed. 2001) (citing *Harper* v. *Virginia Dept. of Taxation*, 509 U. S. 86, 97 (1993)); see also *Smith* v. *West*, 11 Vet. App. 134, 138 (1998) ("'New legal principles, even when applied retroactively, do not apply to cases already closed'" (quoting *Reynoldsville Casket Co.* v. *Hyde*, 514 U. S. 749, 758 (1995); alteration omitted)). That limitation serves important interests in finality, preventing narrow avenues for collateral review from ballooning into "substitute[s] for ordinary error correction through appeal." *Harrington* v. *Richter*, 562 U. S. 86, 102–103 (2011); see also *United Student Aid*

*Funds, Inc.* v. *Espinosa*, 559 U. S. 260, 270 (2010) (an "exception to finality" should not be read to "swallow the rule"). So the VA's approach to collateral relief is not unusual. Here as elsewhere, litigants must overcome a "stron[g]" "presumption of validity" when "otherwise final decisions . . . are collaterally attacked." *Fugo* v. *Brown*, 6 Vet. App. 40, 44 (1993).[2]

2

George also leans on what he describes as "the plain meaning of th[e] words" clear and unmistakable error. Reply Brief 2. As he puts it: "Looking at the 1977 Board's decision today, the legal error is clear. It is unmistakable." *Id.,* at 1. (This is the thrust of JUSTICE GORSUCH's position too. See *post,* at 3–5 (dissenting opinion).) We share the Government's doubt about how natural it is to say that the Board "commit[ted] 'clear and unmistakable error' by faithfully applying a VA regulation that was found to be invalid more than 25 years later." Brief for Respondent 33. More fundamentally, though, this argument is inconsistent with George's well-taken concessions elsewhere that "the [clear-and-unmistakable-error] statutes track preexisting Veterans Court case law" and other agency practice defining a "deeply rooted" regulatory standard. Reply Brief 8; Brief for Petitioner 6. The real question is not what might be called clear and unmistakable error in the abstract, but what was the "prevailing understanding" of this term of art

───────────

[2] The principal dissent claims that this conclusion conflicts with the governing statute's present-tense statement that a VA decision "'*is* subject' to later 'revision'" on collateral review. *Post,* at 5 (opinion of GORSUCH, J.). But it would make little sense for Congress to pass a statute stating that a decision "was" subject to revision. The statute's use of the present tense refers to the time at which relief may be sought. It says nothing about the scope of the category of clear and unmistakable errors meriting relief, as fixed by the regulatory history. So we think there are good reasons why neither George nor any of his *amici* makes this argument.

"under the law that Congress looked to when codifying" it. Reply Brief 2, 4; see *West Virginia Univ. Hospitals, Inc.* v. *Casey*, 499 U. S. 83, 92, n. 5 (1991) (terms of art "*depart* from ordinary meaning"). To the extent they diverge, the historical meaning controls.

More modestly, George seeks to distinguish the statutory meaning from the prior practice on just one point. Because Congress did not expressly enact the specific regulatory principle barring collateral relief for subsequent changes in interpretation, he insists that the principle did not carry over to the statute. But this argument, too, misses the mark. The point of the old-soil principle is that "when Congress employs a term of art," that usage itself suffices to "'adop[t] the cluster of ideas that were attached to each borrowed word'" in the absence of indication to the contrary. *FAA* v. *Cooper*, 566 U. S. 284, 292 (2012). Here, the governing statute "is silent" on a host of matters ranging from the definition of clear and unmistakable error to "the specific procedures that govern a [collateral] claim." *Disabled American Veterans*, 234 F. 3d, at 694, 696 (citing 38 U. S. C. §7111). And we take the statutory "silence" on the details of prior regulatory practice to "l[eave] the matter where it was pre-[codification]." *Kucana* v. *Holder*, 558 U. S. 233, 250 (2010). We decline George's invitation to gerrymander out this one feature of the prior practice.

*    *    *

The invalidation of a VA regulation after a veteran's benefits decision becomes final cannot support a claim for collateral relief based on clear and unmistakable error. We affirm the judgment of the Court of Appeals.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 21–234

KEVIN R. GEORGE, PETITIONER *v.* DENIS R.
MCDONOUGH, SECRETARY OF
VETERANS AFFAIRS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[June 15, 2022]

JUSTICE SOTOMAYOR, dissenting.

I join all but Part II–C of JUSTICE GORSUCH's dissent. The Board of Veterans' Appeals (Board) clearly and unmistakably violated a statutory command in its decision denying petitioner Kevin George's application for service-related benefits. As JUSTICE GORSUCH explains, in the context of this specific statutory framework, the mere fact that the Board relied on a plainly invalid regulation does not shield its final decision from review based on clear and unmistakable error.[1]

The Court thinks otherwise. In support of its holding, the Court notes that Congress, when it enacted the clear-and-unmistakable-error statutes in 1997, codified a pre-existing regulatory doctrine under which clear and unmistakable error did not encompass a subsequent "change in interpretation of law." 38 CFR §3.105 (Cum. Supp. 1963); see *ante,* at 5–6. I agree that Congress incorporated this pre-existing

---

[1] In my view, some invalid Department of Veterans Affairs (VA) regulations might not be erroneous enough for reliance on them to constitute clear and unmistakable error. After all, by definition, not every error is clear and unmistakable. The Board's 1977 decision in George's case, however, meets this demanding standard. The presumption-of-soundness regulation the Board applied was clearly and unmistakably contrary to the unambiguous terms of 38 U. S. C. §1111, as even the VA eventually conceded. See *post,* at 2–3 (GORSUCH, J., dissenting).

regulatory doctrine based on its use of "clear and unmistakable error," a longstanding term of art. See *ante,* at 5, 12.[2] I diverge from JUSTICE GORSUCH on this point. The question remains, however: What constitutes a "change in interpretation of law" excluded from clear and unmistakable error? In George's view, a change in interpretation of law occurs where "an agency . . . choos[es] another permissible alternative construction" of a statute, but not where, as here, a court invalidates a regulation that had egregiously violated the governing statute all along. Brief for Petitioner 18; see also *post,* at 4–5 (GORSUCH, J., dissenting).

The Court disagrees. It holds that under the pre-existing doctrine, judicial invalidation of an unmistakably erroneous regulation was understood to constitute a "change in interpretation of law" for purposes of clear and unmistakable error. See *ante,* at 5–9. The Court's citations offer little support for this conclusion, however. In *Berger* v. *Brown*, 10 Vet. App. 166, 170 (1997), for example, the Court of Veterans Appeals (Veterans Court) stated that opinions from that body "that formulate new interpretations of the law . . . cannot be the basis of a valid [clear-and-unmistakable-error] claim." But the Veterans Court emphasized that the decision under attack, unlike the Board's decision in George's case, had followed "a plausible interpretation of the law," precluded by "nothing in the plain language of the statute," and added that "[t]he statute was, and still is for that matter, susceptible of differing interpretations." *Ibid.* Similarly, in *Damrel* v. *Brown*, 6 Vet. App. 242, 246 (1994), the relevant change in interpretation of law was a Veterans

---

[2] Were there any doubt, legislative history would render the conclusion unavoidable. See H. R. Rep. No. 105–52, pp. 1–2 (1997) ("H. R. 1090 would . . . codify existing regulations which make [VA] decisions . . . subject to revision on the grounds of clear and unmistakable error"); S. Rep. No. 105–57, p. 4 (1997) ("The Committee bill . . . would codify, in statute, the allowance currently specified by regulation" for review based on clear and unmistakable error).

Court-created rule, not the invalidation of a regulation as clearly contrary to the governing statute. And although it was well established by 1997 that clear and unmistakable error "must be based on . . . the law that existed at the time of the prior . . . decision," *Russell* v. *Principi*, 3 Vet. App. 310, 314 (1992) (en banc), this is not inconsistent with George's request for review based on the plain terms of a statute as it existed in 1977, when the Board ruled against him.

Other authorities relied upon by the Court are equivocal. The VA opined in 1994 that invalidation of a regulation by the Veterans Court constituted a "'change in interpretation of law,'" but it also admitted "that VA's historical approach has not been entirely consistent." Op. Gen. Counsel Precedent 9–94, ¶¶6, 8, pp. 4–5 (Mar. 25). Meanwhile, the Veterans Court's 1992 decision in *Look* v. *Derwinski*, 2 Vet. App. 157, while not a model of clarity, undeniably "approv[ed of] collateral relief" based on "a later invalidated regulation," as the Court recognizes. *Ante,* at 8.

My takeaway from these conflicting authorities is that the pre-existing doctrine Congress incorporated in 1997 was unsettled as to whether judicial invalidation of a regulation that squarely contravened an unambiguous statute constituted a "change in interpretation of law." In other words, where the Court perceives certainty, I see at most confusion. Confronted with an ambiguity in the scheme Congress codified into statute, I would apply the venerable "'canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.'" *Henderson* v. *Shinseki*, 562 U. S. 428, 441 (2011) (quoting *King* v. *St. Vincent's Hospital*, 502 U. S. 215, 220–221, n. 9 (1991)). Accordingly, I would hold that George may seek review based on clear and unmistakable error.

For these reasons, as well as others set forth by JUSTICE GORSUCH, I respectfully dissent.

# SUPREME COURT OF THE UNITED STATES

———————

No. 21–234

———————

## KEVIN R. GEORGE, PETITIONER *v.* DENIS R. MCDONOUGH, SECRETARY OF VETERANS AFFAIRS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[June 15, 2022]

JUSTICE GORSUCH, with whom JUSTICE BREYER joins, and with whom JUSTICE SOTOMAYOR joins as to all but Part II–C, dissenting.

A young recruit to the United States Marines left the ranks after military doctors found his service aggravated a preexisting mental illness. Eventually, he applied for service-related benefits. The Veterans Administration refused his application. It turns out the agency did so based on a badly mistaken reading of the law. On discovering the error years later, the Marine petitioned the agency to revisit its decision. Congress has expressly allowed veterans to do exactly that, providing that they may "at any time" petition the agency to cure "clear and unmistakable error[s]" in its past administrative decisions. 38 U. S. C. §§ 5109A, 7111. Despite this statutory command, the agency refused to reopen the case. Today, the Court upholds the agency's decision. Respectfully, I would not.

## I

When Kevin George enlisted in the Marines in 1975, doctors conducted an entrance exam and found him fit to serve. But shortly after training began, he was hospitalized and diagnosed with an "Acute Schizophrenic Reaction" that occurred "[i]n line of duty." Record in No. 16–2174

(Ct. Vet. App.), p. 1275.  Later, after a period of resumed training, Mr. George again required medical attention and a military psychiatrist diagnosed him with "Paranoid Schizophrenia" that was "Aggravated by Service."  App. to Brief for Petitioner 3a.  A military medical board agreed, concluding that Mr. George's condition predated his service but was "aggrav[a]ted by a period of active duty."  *Id.*, at 8a.  Ultimately, at the medical board's recommendation, Mr. George was discharged.

When Mr. George filed a claim for veteran benefits a few months later, he had cause for optimism.  Congress has provided that veterans are entitled to "compensation" for any "disability resulting from [the] aggravation of a preexisting injury suffered or disease contracted in [the] line of duty."  38 U. S. C. § 1110.  Congress has bolstered that right with a presumption that individuals are in "sound condition" when they enter service and are entitled to benefits later unless the government demonstrates by "clear and unmistakable evidence . . . that [their] injury or disease existed before acceptance and enrollment *and was not aggravated by such service.*"  § 1111 (emphasis added).  Relying on those provisions, Mr. George claimed that his military service aggravated his schizophrenia, meaning the government had the burden to disprove his claim.

The Veterans Administration, the precursor to today's Department of Veterans Affairs (together, the Department or VA), denied Mr. George's application.  In the process, the agency neglected to apply § 1111's statutory presumption of soundness that attached to his entry into military service.  It also failed to follow § 1111's command requiring the agency to prove that Mr. George's condition "was not aggravated by such service."  Instead, the VA relied on a very different set of rules of its own creation.  Under them, the agency said, all it had to show was that Mr. George suffered "an injury or disease [that] existed prior [to service]."  38 CFR § 3.304(b) (1976).  And after determining that Mr.

George indeed suffered from schizophrenia before he joined the military, the agency denied his claim. To make matters worse, the agency even faulted Mr. George for failing to carry *his* supposed burden of "support[ing] a claim for aggravation." App. to Pet. for Cert. 86a.

Eventually, virtually everyone came to agree that the administrative regulations on which the VA relied in deciding Mr. George's case defied the statutory terms Congress prescribed in § 1111. In 2003, the agency's General Counsel admitted as much. See VA Op. Gen. Counsel Precedent 3–2003, ¶¶ 3, 9. The following year, the Federal Circuit held that the statute "clear[ly]" forbade the VA's rules. *Wagner* v. *Principi*, 370 F. 3d 1089, 1094 (2004).

After the Federal Circuit's decision in *Wagner*, Mr. George asked the agency to reconsider his case under the correct standard set forth in § 1111. Understandably so. Congress has directed the VA to revise any prior administrative benefits decision infected with "clear and unmistakable error." 38 U. S. C. §§ 5109A (regional office), 7111 (veterans board). Congress has further instructed that veterans may petition for review under this standard "at any time." §§ 5109A(d), 7111(d). Yet, despite these directions, the agency in 2016 refused to reopen Mr. George's case. To justify its decision, the agency reasoned that "judicial decisions that offer new interpretations of the law subsequent to a VA decision cannot be the basis of a" claim for clear and unmistakable error under the terms of §§ 5109A and 7111. App. to Pet. for Cert. 71a. A divided panel of the Veterans Court, a non-Article III tribunal, affirmed. See *George* v. *Wilkie*, 30 Vet. App. 364 (2019). So did the Federal Circuit. 991 F. 3d 1227 (2021).

## II
### A

I would reverse. In § 1111, Congress provided veterans

with a presumption of soundness and required the government to prove by clear and convincing evidence that any condition a veteran suffered was not aggravated by service. Today, however, everyone accepts that the regulations the agency relied on to reject Mr. George's initial claim impermissibly failed to implement these statutory commands. On any reasonable account, that amounts to a clear and unmistakable agency error entitling Mr. George to a new hearing. Regardless whether he can prevail under the test Congress actually prescribed in § 1111, he is at least entitled to a hearing consistent with the law's terms. The agency's failure to provide him that simple (and legally compelled) courtesy is inexcusable.

Of course, just how badly the agency's regulations departed from Congress's commands in § 1111 may not have been widely appreciated until the Federal Circuit highlighted the problem in *Wagner*. But a "judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision." *Rivers* v. *Roadway Express, Inc.*, 511 U. S. 298, 311–313 (1994). And an agency's "'regulation which . . . operates to create a rule out of harmony with the statute, is a mere nullity.'" *Dixon* v. *United States*, 381 U. S. 68, 74 (1965). From these premises, it follows that the agency's ruling in this case, depending as it did on a statutorily impermissible regulation, was infected by "clear and unmistakable error" that Mr. George is entitled to have corrected "at any time." §§ 5109A, 7111.

B

What is the Court's reply? It highlights the fact that the agency's regulations bound its own internal administrative decisionmakers when they ruled on Mr. George's initial claim. Given that, the Court says, the agency's ruling was perfectly sound at the time, infected by no error of any kind, let alone clear and unmistakable error. Of course, the Fed-

eral Circuit in *Wagner* later held that the agency's regulations "clear[ly]" defied its statutory charge from Congress. 370 F. 3d, at 1094. But, on the Court's view today, that decision represented a *change* in governing law. See *ante*, at 7, 9.

A clear and unmistakable agency error cannot be made to vanish so easily. Even if an agency's unlawful regulations may bind its own employees until a court says otherwise, that does not mean its decisions applying those regulations to others are error-free. The regulations on which the VA relied in this case always defied Congress's express command in § 1111. In that sense, they were always a "'nullity.'" *Dixon*, 381 U. S., at 74. Nor does it make a difference that *Wagner* recognized as much only some time later. Once more, when a court interprets a statute and declares contrary regulations invalid, it cannot and does not change the law; it can only explain what the law has "*always* meant." *Rivers*, 511 U. S., at 313, n. 12. The Court today errs badly by excusing an obvious error simply because it was once enshrined by the agency in a statutorily defiant regulation.

What is more, the Court's reading is at odds with the plain terms of §§ 5109A and 7111. Under those statutes, an initial administrative ruling denying benefits "*is* subject" to later "revision . . . [i]f evidence *establishes* the [clear and unmistakable] error." §§ 5109A(a), 7111(a) (emphasis added). Notice the tense. The law does not ask if the agency's error *was* "clear and unmistakable" at the time of its original decision. Instead, it commands the agency to correct any clear and unmistakable error presently established. The same statutes further instruct that a petition "to determine whether clear and unmistakable error *exists* in a case may be instituted" in various ways. §§ 5109A(c), 7111(c) (emphasis added). More present tense. Congress easily could have said that a decision is reviewable only

where an error *was* "clear and unmistakable" from the out-
set. It did not. Instead, Congress instructed the agency to
assess whether—from its *present* vantage—one of its prior
administrative rulings suffers from a "clear and unmistak-
able error."

## C

Perhaps sensing these problems with its primary theory,
the Court offers a second and slightly different one. Now it
insists that the phrase "clear and unmistakable error" is a
term of art that originated in (still other) agency regula-
tions. *Ante*, at 5. Under those regulations, the Court ob-
serves, an error did not qualify as "clear and unmistakable"
if it was based on a "change in law or . . . a change in inter-
pretation of law." 38 CFR § 3.105 (Cum. Supp. 1963); see
*ante*, at 6. On the Court's telling, Congress meant to incor-
porate this same standard when it adopted §§ 5109A and
7111. And, the Court continues, that standard precludes
relief in this case because the error here is apparent only
thanks to the Federal Circuit's intervening *Wagner* deci-
sion, which represented a "change in interpretation of law."
See *ante*, at 6–8.

This argument is no more persuasive than the last.
When Congress "transform[s] . . . a regulatory procedure
[in]to a statutory form of relief," we enforce only those com-
ponents Congress actually "codif[ied]" in the statutory text.
*Kucana* v. *Holder*, 558 U. S. 233, 249–250 (2010) (internal
quotation marks omitted). And here Congress did not cod-
ify the part of the old agency regulation on which the Court
relies. Nothing in the text of § 5109A or § 7111 says that
errors resulting from "changes in law" or "changes in inter-
pretation" are immune from correction. To the contrary,
Congress omitted this language from the agency's prior reg-
ulations when it adopted §§ 5109A and 7111. Under the
law Congress actually wrote, prior agency decisions are

"subject to revision on the grounds of clear and unmistakable error." Full stop. This Court should not be in the business of adding words to the law, let alone to insulate badly mistaken agency decisions from any chance of correction.

## III

In the end, it is hard to avoid the impression that the Court thinks an old agency ruling in Mr. George's case just isn't worth revisiting. See *ante*, at 10. Maybe, too, that might seem an understandable impulse on first encounter. After all, in civil and criminal litigation new judicial interpretations about a law's meaning normally do not apply to old cases after they have reached final judgment. See, *e.g.*, *Harper* v. *Virginia Dept. of Taxation*, 509 U. S. 86, 94–97 (1993).

But it turns out that impulse is doubly misguided here. For one thing, it is a mistake to equate veteran benefits cases with ordinary civil and criminal litigation. Recognizing the sacrifices of those who have left private life to serve their country, Congress has ordained that a veteran may petition for review of clear and unmistakable errors in past administrative decisions "at any time." §§ 5109A(d), 7111(d). Congress's "whole purpose" in setting up this scheme was "to make an exception to [the usual rule of] finality" for our veterans in recognition of their service to the Nation. *Gonzalez* v. *Crosby*, 545 U. S. 524, 529 (2005).

For another thing, this case doesn't just affect Mr. George. It risks insulating countless other decisions in which the Department has wrongly denied veteran benefits based on self-serving regulations inconsistent with Congress's instructions. See, *e.g.*, Brief for National Veterans Legal Services Program et al. as *Amici Curiae* 15–27; Brief for Swords to Plowshares et al. as *Amici Curiae* 19–20. Veterans already face challenges enough in dealing with the Department. On average, the agency takes seven years to

process their administrative appeals. See Brief for National Law School Veterans Clinic Consortium as *Amicus Curiae* 18. Over the past five years, it seems that the Veterans Court has affirmed less than 10 percent of the agency's decisions. See *ibid.* Internal audits have revealed massive numbers of improperly denied claims. See *id.*, at 19. I would not add to these problems by shielding the Department from the inconvenience of having to answer for its own clear and unmistakable errors. Respectfully, I dissent.