# United States Court of Appeals for the Federal Circuit

---

**ROCCO V. PERCIAVALLE,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1491

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-3766, Chief Judge Margaret C. Bartley, Judge Amanda L. Meredith, Judge Coral Wong Pietsch, Judge Grant Jaquith, Judge Joseph L. Falvey Jr., Judge Joseph L. Toth, Judge Michael P. Allen, Judge Scott Laurer, Judge William S. Greenberg.

---

Decided:  July 25, 2023

---

CESAR LOPEZ-MORALES, Orrick, Herrington & Sutcliffe LLP, Washington, DC, argued for claimant-appellant.  Also represented by MELANIE L. BOSTWICK; KENNETH DOJAQUEZ, Carpenter Chartered, Topeka, KS.

MEEN GEU OH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by

BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY; BRIAN D. GRIFFIN, ANDREW J. STEINBERG, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before MOORE, *Chief Judge*, DYK and REYNA, *Circuit Judges*.

DYK, *Circuit Judge*.

Rocco V. Perciavalle appeals a decision of the Court of Appeals for Veterans Claims ("Veterans Court") affirming the denial of Mr. Perciavalle's claim by the Board of Veterans' Appeals ("Board"). This case involves the question of whether the Veterans Court, having determined that the Board erred in failing to properly interpret a veteran's claim, correctly determined that no remand to the Board was required, either because the interpretation error was harmless or because, according to some members of the Veterans Court, there was no error in the first place. We affirm in part, vacate in part, and remand.

BACKGROUND

I

Mr. Perciavalle served in the Army from 1962 to 1964. While in the Army, Mr. Perciavalle injured his left knee, which required surgery. In 1966, Mr. Perciavalle submitted a claim for compensation for his knee injury to the Department of Veterans Affairs ("VA"). A physician evaluated Mr. Perciavalle, who reported "[w]eakness and feeling of instability of left knee." J.A. 124. The VA awarded Mr. Perciavalle a 10 percent disability for medial menisectomy under Diagnostic Code ("DC") 5259 for "[c]artilage, semilunar, removal of, symptomatic." 38 C.F.R. § 4.71a (1966). At the time of the 1966 examination, Mr. Perciavalle's left knee exhibited a range of motion from 0 to 145 degrees.

In 1971, Mr. Perciavalle underwent another orthopedic examination of his left knee, seeking an increased disability rating. The x-ray showed that "[t]he joint space is questionably narrowed medially and there does appear to be some slight blunting of the tibial spines. On one view there is a question of nodular irregularity of the medial condyle of the femur." J.A. 116. The physician noted "normal" extension of the knee with a flexion to 135 degrees, no quadriceps atrophy or weakness, no swelling or tenderness, but observed that Mr. Perciavalle had "very slight instability of [the] joint laterally." J.A. 119. The VA reviewed the examination report and found that it did not warrant an increase in Mr. Perciavalle's disability rating. Mr. Perciavalle did not appeal that decision, and it became final.

In 2015, Mr. Perciavalle requested that the VA Regional Office ("RO") reopen the 1971 rating decision for clear and unmistakable error ("CUE"). Mr. Perciavalle contended that he was entitled to two separate disability ratings, one for a slight instability of the left knee under DC 5257[1] and another based on the 1971 examination for limitation of motion of flexion and discomfort secondary to arthritis under DC 5003-5260. Mr. Perciavalle argued that he was entitled to the second disability rating because the 1971 x-ray "clearly show[ed] degenerative changes in the veteran's left knee" as compared to the 1966 examination, which resulted in a range of motion decrease of 10 degrees

---

[1]    As noted above, Mr. Perciavalle was originally granted service connection for medial meniscectomy under DC 5259. Mr. Perciavalle's CUE claim argues that this original rating should have been changed from DC 5259 to DC 5257. He sought corrective action as to the failure to assign a second rating based on the 1971 examination under DC 5003-5260 for limitation of motion of flexion and discomfort secondary to arthritis.

of flexion between 1966 and 1971.  J.A. 114.  At the time of the 1971 rating decision, the Code of Federal Regulations provided DC 5257 for "[k]nee . . . [r]ecurrent subluxation or lateral instability," DC 5003 for "[a]rthritis, degenerative, hypertrophic, or osteoarthritis," and DC 5260 for "[l]eg, limitation of flexion of."  38 C.F.R. § 4.71a (1971).  The regulations allowed for the combination of two or more disability ratings, 38 C.F.R. § 4.25 (1971),[2] but required the "[a]voidance of pyramiding:"

> The evaluation of the same disability under various diagnoses is to be avoided . . . .  Both the use of manifestations not resulting from service-connected disease or injury in establishing the service-connected evaluation, and the evaluation of the same manifestation under different diagnoses are to be avoided.

38 C.F.R. § 4.14 (1971).

## II

In order to understand Mr. Perciavalle's claim, a description of law in regard to pyramiding is required.  In 1964 (before the 1971 RO decision in Mr. Perciavalle's case), our predecessor court, the Court of Claims, considered the issue of pyramiding in *Wolf v. United States*, 168 Ct. Cl. 24 (1964).  That case did not involve a claim for veterans' benefits.  Rather, the veteran claimed that he was entitled to disability retirement.  In this context, the

---

[2]     38 C.F.R. § 4.25 establishes a combined ratings table that allows for the combination of two or more disabilities to ascertain an overall disability rating.  *See* 38 C.F.R. § 4.25 (1971) (explaining that "[t]o use the combined ratings table, the disabilities will first be arranged in the exact order of their severity, beginning with the greatest disability and then combined with use of the table as hereinafter indicated" and then describing use of the table).

Claims Court looked to the VA "Schedule for Rating Disabilities." *Id*. at 32. At the time of the *Wolf* opinion, the schedule contained § 4.14 regarding pyramiding. *See Schedule for Rating Disabilities*, 29 Fed. Reg. 6718, 6719 (May 22, 1964).[3] The veteran had part of his small intestine and parts of his large intestine resected (that is, removed). *See Wolf*, 168 Ct. Cl. at 27. The question was whether he "should . . . have been rated a disability percentage on each resection," *id*. at 30, i.e., whether he was entitled to separate ratings for the resection of his small intestine and the resection of his large intestine, which were listed under separate diagnostic codes. The Court of Claims held that the veteran was entitled to a 40 percent rating for the veteran's resection of the small intestine and a 20 percent rating for the resection of the large intestine. *Id*. at 32. The court explained that

> Respecting defendant's argument that to rate both would amount to pyramiding, it seems clear that the manifestations of plaintiff's intestinal resections are separate and distinct. We can find nothing in the record which teaches us that resection of the small intestine produces the same symptoms as resection of the large intestine. . . . Clearly, the small intestine performs a different function than the large. In other words, each of the resections produces a different manifestation.

---

[3]    The *Wolf* opinion refers to the "Veterans Administration Schedule for Rating Disabilities, 1957 edition." 168 Ct. Cl. at 29 n.6. The VA's Schedule for Rating Disabilities, originally effective in 1946, was added to the Code of Federal Regulations in 1964 at Title 38, Chapter I, Part 4, where it presently remains (as amended). The pyramiding provision in the 1964 regulation and the "Schedule for Rating Disabilities" appear to have been the same.

*Id.* at 31.

In 1994, well after the 1971 RO decision, the Veterans Court considered the issue of pyramiding in *Esteban v. Brown*, 6 Vet. App. 259 (1994), in the context of veterans' benefits. In that case, a veteran had requested an increased disability rating for residuals of a head injury including scars, injury to facial muscles, and disfigurement. *Id.* at 259. The Veterans Court held that the veteran was entitled to three separate ratings—a "10% rating for disfigurement under DC 7800 with an additional 10% rating for tender and painful scars under DC 7804 and a third 10% rating for facial muscle injury interfering with mastication under DC 5325." *Id.* at 262. The Veterans Court held that the separate ratings were permissible under 38 C.F.R. § 4.14 because "*none* of the symptomatology for any one of these three conditions is *duplicative* of or *overlapping* with the symptomatology of the other two conditions." *Id.* That is, the conditions did not constitute the "same disability" or the "same manifestation" under the regulation. *Id.* at 261 (quoting 38 C.F.R. § 4.14).

In 1997, the VA's General Counsel issued a precedential opinion citing *Esteban* and holding that "[a] claimant who has arthritis and instability of the knee may be rated separately under diagnostic codes 5003 and 5257," J.A. 104, the very combination involved here.

## III

In 2015, the RO denied Mr. Perciavalle's CUE claim to reopen the 1971 RO decision, reasoning that "[t]he decision not to grant a separate evaluation . . . was properly based on the available evidence of record and the rules in effect at the time the issue was considered." J.A. 110. The RO further explained that the 1997 VA General Counsel opinion "was not in effect at that period of time." J.A. 110.

Mr. Perciavalle filed a Notice of Disagreement. In response, the RO issued a Statement of the Case in May 2017

explaining that, while a "General Counsel opinion, dated July 1, 1997, [which] stems from a [1994 Veterans Court] decision . . . allow[s] us to assign separate evaluations [for two different knee disability codes, p]rior to this court decision and General Counsel Opinion, separate evaluations were not assigned." J.A. 106. In August 2017, Mr. Perciavalle sent an informal letter to the Board. The letter stated that "there is no bar to the retroactive effect of *Esteban*," but "[w]e are not arguing the 1997 General Counsel opinion or any VA <u>rules</u> after the 1971 rating decision. We contend that the law has always permitted that a separate evaluation can be applied . . . ." J.A. 74–75. Mr. Perciavalle "contend[ed] that corrective action should be taken under the provisions of 38 CFR § 3.105(a) to correctly apply the law that was in existence at the time of the July 22, 1971, rating decision." J.A. 75.

The Board concluded that the 1971 rating decision did not contain CUE, reasoning that "[t]he Veteran has not provided any evidence that, in July 1971, VA interpreted the rating schedule to allow for separate ratings . . . . Instead, the Veteran contends that a more recent interpretation of VA regulations should have retroactive effect." J.A. 70. The Board explained, "[b]ecause a later interpretation of an existing regulation cannot constitute CUE and that is the only basis on which the Veteran asserts CUE, the Veteran's motion must be denied as a matter of law." J.A. 71.

Mr. Perciavalle appealed to the Veterans Court. After a panel decision, the Veterans Court elected to review the case en banc. The en banc court issued a fractured decision. A majority of the en banc court (six of nine judges) held that the Board erred in construing Mr. Perciavalle's CUE claim as a claim based on the retroactivity of later legal authorities (*Esteban* and the 1997 General Counsel opinion). A different majority (six of nine judges), however, voted to affirm the judgment. Three judges, in an opinion by Judge Allen, voted to affirm on the theory, contrary to

the majority that found error in the Board decision, that there was no error.  Three other judges (in two separate opinions: one by Judge Toth and another by Judges Laurer and Jaquith) found that, although the Board erred in construing Mr. Perciavalle's claim as one based on retroactivity, the error was harmless.  Mr. Perciavalle appeals.  We have jurisdiction under 38 U.S.C. § 7292(a).

DISCUSSION

Section 5109A of Title 38 of the U.S. Code provides a mechanism for a claimant to challenge a final decision by the RO.  "At any time, a veteran may ask the . . . regional office to revise a final benefits decision on grounds of 'clear and unmistakable error.'" *George v. McDonough*, 142 S. Ct. 1953, 1958 (2022) (quoting 38 U.S.C. § 5109A).  By regulation, "[c]lear and unmistakable error is a very specific and rare kind of error," 38 C.F.R. § 3.105(a)(1)(i); *id.* § 20.1403(a),[4] that "does not include the otherwise correct application of a statute or regulation where, subsequent to the decision being challenged, there has been a change in the interpretation of the statute or regulation." *id.* § 3.105(a)(1)(iv); *see also id.* § 20.1403(e) (similar).  Under 38 U.S.C. § 5109A(a), "[i]f evidence establishes [clear and unmistakable] error, the prior decision shall be reversed or revised."  Claimants must show that "[e]ither the correct facts, as they were known at the time, were not before the

[4]     Two regulations describe clear and unmistakable error: 38 C.F.R. § 3.105 and § 20.1403.  Section 20.1403 applies to decisions by the Board, while § 3.105 applies to decisions by the agency of original jurisdiction—here, the RO.  The language of the two is virtually identical.  Section 3.105 was updated in 2019, but as noted by the Veterans Court, no party contends that the change in language between the 2019 version and the prior version makes any substantive difference here.  For convenience, we cite to the current version of the regulation.

adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied." *Willsey v. Peake*, 535 F.3d 1368, 1371 (Fed. Cir. 2008) (citation omitted).

In a decision rendered after the Veterans Court decision had been issued, the Supreme Court affirmed that CUE is a "narrow category" of claims, *George*, 142 S. Ct. at 1959, that could include, "for example, the VA's failure to apply an existing regulation to undisputed record evidence." *Id.* A later change in the law (including a later invalidation of the law), however, cannot constitute the basis of a CUE claim. *Id.* at 1959–60. "[T]he correct application of a binding regulation does not constitute 'clear and unmistakable error' at the time a decision is rendered, even if that regulation is subsequently invalidated." *Id.* at 1960. That is, a CUE claim must be evaluated by the law as it existed at the time the challenged decision was rendered. *See id.*; *see also* 38 C.F.R. § 3.105(a)(1)(iii) ("Review for clear and unmistakable error in a prior final decision of an agency of original jurisdiction must be based on the evidentiary record and the law that existed when that decision was made.").

I

In reviewing the decision of the Veterans Court, we are confronted with an odd situation—the majority decision of the Veterans Court on the question of relief is comprised of three separate opinions. First, Judge Allen, joined by Judges Meredith and Falvey, concurred in the judgment, but (contrary to the majority that found error in the Board decision) on the basis that the Board did not err. Second, Judge Toth concurred in the judgment, finding that, although the Board had erred in construing Mr. Perciavalle's claim as one based on retroactivity, the error was harmless as a matter of law under *George v. McDonough*, 991 F.3d 1227 (Fed. Cir. 2021), and the non-precedential *Steele v. McDonough*, 856 F. App'x 878 (Fed. Cir. 2021), because the alleged CUE was a legal error that had not yet been

"identified as erroneous by a court decision or VA publication" in 1971.  J.A. 37.  Third, Judges Laurer and Jaquith found the Board's error to be harmless on a different theory.  The Laurer and Jaquith opinion found that "the evidence in 1971 does not compel the conclusion that [the] VA clearly and unmistakably erred in not awarding a separate evaluation for left knee arthritis," J.A. 29, because none of the evidence clearly supported an arthritis diagnosis.  Thus, they found that Mr. Perciavalle did not provide "evidence of arthritis confirmed by x-ray."  J.A. 30.

We first address the Allen opinion, which (contrary to the majority that found error in the Board's decision) held that there was no error in the Board's decision.  The government defends the Allen opinion's holding that the Board did not err by arguing that the Veterans Court lacked jurisdiction to make a contrary determination that the Board erred.  This view was not articulated or adopted in the Allen opinion, and the government's lack of jurisdiction theory is untenable.  The Board denied Mr. Perciavalle's claim "as a matter of law," J.A. 71, and the Veterans Court reviewed this denial de novo, following *Andrews v. Principi*, 18 Vet. App. 177, 182 (2004), *aff'd sub nom. Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005), and *Phillips v. Brown*, 10 Vet. App. 25, 30 (1997).  The government urges that 38 U.S.C. § 7261(c), which prohibits the Veterans Court from conducting a de novo review of factual findings, prohibited the Veterans Court from reviewing the CUE claim de novo.  That is, the government argues that the Board's determination that Mr. Perciavalle's claim was based on a retroactive application of later-developed law is a factual finding that the Veterans Court could not review de novo.  But even if it were so, the Veterans Court essentially concluded that any such finding by the Board would be clearly erroneous given the clarity of Mr. Perciavalle's position before the Board, a determination well within the Veterans Court's authority.  38 U.S.C. § 7261(a)(4) ("[I]n the case of a finding of material fact adverse to the claimant

[the Veterans Court shall] hold unlawful and set aside or reverse such finding if the finding is clearly erroneous."). There was no legal error in the Veterans Court majority opinion finding that the Board erred in interpreting Mr. Perciavalle's claim.

There is an argument that the Veterans Court erred in counting the Allen opinion in the majority on the issue of relief when the Allen opinion's position on error had already been rejected by a majority of the court. But we need not resolve that issue. The Allen opinion in any event rested on an erroneous legal principle. It read the veteran's claim as based on retroactivity, but concluded that it did not matter whether the claim was based on a retroactivity theory because in order to state a claim of CUE, the veteran was required to set forth in his initial pleading a full-fledged legal argument as to why, in 1971, the RO erred in rejecting his claim. *See* J.A. 40 (requiring "an allegation about how, in the context of the body of law that existed in 1971, the 1971 RO could not have plausibly interpreted the rating schedule and anti-pyramiding regulations in his case to preclude the separate ratings appellant sought"). The Allen opinion would have required Mr. Perciavalle to either "attempt to analyze the regulations' plain language to show how the RO's interpretation was clearly and unmistakably wrong," J.A. 41, or "produce[] a contemporaneous interpretation that reconciled the regulations in his favor," J.A. 42.

This assertion ignores the fact that the "VA's duty to sympathetically read a veteran's pro se CUE motion to discern all potential claims is antecedent to a determination of whether a CUE claim has been pled with specificity." *Andrews v. Nicholson*, 421 F.3d 1278, 1283 (Fed. Cir.

2005).[5] Here, Mr. Perciavalle's CUE claim set forth the relevant facts and regulations. Under a sympathetic reading of Mr. Perciavalle's claim, the VA was required to "determine all potential claims raised by the evidence, <u>applying all relevant laws and regulations</u>." *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001) (emphasis added). The Allen concurrence erred in requiring Mr. Perciavalle to set forth a legal argument with supporting authority in order to state a CUE claim.

## II

The other two opinions that represented the views of the majority of the Veterans Court as to relief rested on a determination that the Board's decision, even if erroneous, was harmless error. Under the statute, the Veterans Court must "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b)(2). Under *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009), the Veterans Court must "apply the same kind of 'harmless-error' rule that courts ordinarily apply in civil cases." The harmless error analysis is a "case-specific application of judgment, based upon examination of the record." *Id.* at 407. In its consideration of harmless error, however, if "additional findings of fact are necessary regarding matters open to debate, the proper action for the Veterans Court is to remand to the Board for consideration

---

5    Even though Mr. Perciavalle was assisted by a non-attorney representative in filing his CUE claim, we have explained that "[a]lthough aides from veterans' service organizations provide invaluable assistance to claimants seeking to find their way through the labyrinthine corridors of the veterans' adjudicatory system, they are not generally trained or licensed in the practice of law." *Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009) (internal quotation marks and citation omitted). Thus, "limited assistance [from a non-attorney representative] is insufficient to disqualify [a claimant] as a pro se claimant." *Id.*

of those facts in the first instance." *Tadlock v. McDonough*, 5 F.4th 1327, 1337–38 (Fed. Cir. 2021).

Here, the government argues that this court should make its own determination of harmless error and affirm the Veterans Court because the error was harmless. But we have no authority to review, much less determine, the facts in veterans' cases, *see* 38 U.S.C. § 7292(d)(2), and we have specifically held that we lack authority to make a fact-based determination of harmless error, *see, e.g.*, *Conway v. Principi*, 353 F.3d 1369, 1375 (Fed. Cir. 2004); *Wood v. Peake*, 520 F.3d 1345, 1351 (Fed. Cir. 2008).

We instead consider whether the view of the Veterans Court judges who relied on harmless error is sustainable. In this respect, the Toth opinion contains plain error. Judge Toth reasoned that CUE claims were impermissible "wherever the alleged legal error or disputable question of law was resolved by a court decision or official Agency publication (such as a General Counsel precedential decision) issued after the decision the veteran seeks to collaterally attack became final." J.A. 36. The Toth opinion goes further, explaining that "where [an error] has yet to be identified as erroneous by a court decision or VA publication" it cannot be CUE. J.A. 37. But the language of the regulation itself can establish the existence of CUE. It is clear from the Supreme Court's recent decision in *George* that the correct CUE inquiry is simply whether the original decision was a "correct application of a binding regulation" or law, regardless of later changes in the law or later decisions by the agency or a court. 142 S. Ct. at 1960. The CUE regulation does not prohibit CUE claims simply because the law at issue was the subject of a later decision. In short, a legal error may be clear for the purpose of CUE despite the fact that there was no preceding court or agency

decision on the precise legal question. Thus, the Toth opinion is based on legal error.[6]

Finally, Mr. Perciavalle contends that the Laurer and Jaquith opinion contains legal error because it made an appellate fact finding, contrary to *Tadlock*, that Mr. Perciavalle's medical records did not support a disability rating of limitation of motion secondary to arthritis, i.e., that the Board's error in reading Mr. Perciavalle's claim was harmless. We need not decide the question, because the Allen and Toth opinions contain error. These errors in the opinions representing four of the six affirming judges are sufficient to support reversal.

## CONCLUSION

The Veterans Court did not err in concluding that the Board incorrectly interpreted Mr. Perciavalle's CUE claim. The Veterans Court did err, however, in affirming the Board. We vacate and remand to the Veterans Court with directions to remand the case to the Board to address the question of a CUE in the 1971 decision consistent with this opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

### COSTS

Costs to appellant.

---

[6] As noted by the Veterans Court majority finding error in the Board decision, *Wolf*, 168 Ct. Cl. 24, was a prior relevant decision regarding pyramiding, J.A. 23, which Mr. Perciavalle now contends favors his position.