# United States Court of Appeals for the Federal Circuit

---

**CLINTON SIPLES,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1528

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-7957, Judge Joseph L. Toth.

---

Decided: February 7, 2025

---

KENNETH DOJAQUEZ, Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

BORISLAV KUSHNIR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY; JONATHAN KRISCH, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before CHEN, BRYSON, and STOLL, *Circuit Judges.*

CHEN, *Circuit Judge.*

Clinton Siples is a veteran of the United States Air Force (Air Force) who was granted service connection for bilateral shoulder subluxation by a Regional Office (RO) of the United States Department of Veterans Affairs (VA). After that decision became final, the United States Court of Appeals for Veterans Claims (Veterans Court) decided *Burton v. Shinseki*, 25 Vet. App. 1 (2011) (*Burton*), which deferred to the Secretary of Veterans Affairs' interpretation of 38 C.F.R. § 4.59 as not limited to cases of arthritis. Mr. Siples then filed a motion alleging clear and unmistakable error (CUE) in the RO's rating decision, contending that the newly interpreted § 4.59 would have required the VA to assign him a higher rating for his shoulder disability, which was not based on arthritis. The Veterans Court affirmed the Board of Veterans' Appeals' (Board) denial of Mr. Siples's CUE motion on the basis that, at the time of his rating decision, § 4.59 was not undebatably understood to apply to cases other than arthritis, and thus there was no error of the type required for CUE. *Siples v. McDonough*, No. 19-7957, 2021 WL 5919626 (Vet. App. Dec. 15, 2021) (*Decision*). Mr. Siples appeals. For the reasons explained below, we *affirm*.

BACKGROUND

I.  Section 4.59

We begin with a history of 38 C.F.R. § 4.59. Section 4.59, unamended since its adoption in 1964, is titled "Painful motion" and provides in full:

> *With any form of arthritis*, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification. Sciatic neuritis is not uncommonly caused

> by *arthritis* of the spine.  The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability.  *It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint.*  Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased.  Flexion elicits such manifestations.  The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint.

38 C.F.R. § 4.59 (emphases added); *see* 29 Fed. Reg. 6718, 6725 (May 22, 1964).  Prior to the Veterans Court's 2011 decision in *Burton*, non-precedential decisions of the Veterans Court were inconsistent as to whether § 4.59 applied to non-arthritis claims.  *Compare, e.g.*, *Denk v. West*, 16 Vet. App. 460, 1999 WL 446865, at *4 (1999) (unpublished table decision) ("Because § 4.59 applies to arthritis and because the appellant has not been diagnosed as having arthritis, that regulation is not applicable to this claim." (citation omitted)), *with Abbey v. Principi*, 18 Vet. App. 13, 2001 WL 1181652, at *1–2 (2001) (unpublished table decision) (remanding for the Board to address § 4.59 in a non-arthritis claim).  A pair of precedential Veterans Court decisions had also applied § 4.59 to arthritis-based claims, though without formally interpreting the regulation as limited to that context.  *See Ferguson v. Derwinski*, 1 Vet. App. 428, 430 (1991); *Lichtenfels v. Derwinski*, 1 Vet. App. 484, 488 (1991).

In *Burton*, a veteran argued that § 4.59 was applicable to rating his shoulder pain not based on arthritis.  The Secretary at first disagreed and argued that § 4.59 was applicable to only arthritis-based claims.  *See Burton*, 25 Vet.

App. at 3. A single-judge memorandum decision of the Veterans Court agreed with the Secretary. *See id.* at 2–3. The Veterans Court subsequently granted the veteran's motion for a panel decision and withdrew the memorandum decision in order to "clarify the law as to whether § 4.59 is applicable only to claims involving arthritis." *Id.* at 3. At that point, the Secretary filed a supplemental brief that reversed course and conceded that § 4.59 may apply in cases other than arthritis, citing the earlier reflection of that position in VA Fast Letter 04-22 (Oct. 1, 2004).[1] *Id.*

In the panel decision, the Veterans Court recognized that § 4.59 begins by stating that "[w]ith any form of arthritis, painful motion is an important factor of disability," and that § 4.59 mentions arthritis again in the third sentence. *Burton*, 25 Vet. App. at 3–4 (quoting 38 C.F.R. § 4.59). On the other hand, the Veterans Court explained that "the majority of the regulation provides guidance for noting, evaluating, and rating joint pain, and that guidance is devoid of any requirement that the pain be arthritis related." *Id.* at 4. Looking also to the title of the regulation as a tool of interpretation, the court observed that the title—"Painful motion"—"implies no limitation to arthritis claims," in contrast to the title of a neighboring section, 38 C.F.R. § 4.58 ("Arthritis due to strain"), which deals exclusively with arthritis. *Id.* Accordingly, the Veterans Court deferred to the Secretary's interpretation of § 4.59 as not limited to arthritis claims, finding it reasonable and "not inconsistent with the regulation or otherwise plainly erroneous." *Id.* at 5; *see also id.* at 3. This court entered a judgment of affirmance without opinion pursuant to Federal Circuit Rule 36. *See Burton v. Shinseki*, 479 F. App'x 978 (Fed. Cir. 2012) (per curiam).

---

[1]    The Fast Letter was issued a little over two months after the RO's decision in Mr. Siples's case.

## II.  Mr. Siples's Appeal

Mr. Siples served honorably in the Air Force from 1978 to 2003.  After his discharge from the Air Force, Mr. Siples sought VA disability benefits for a history of dislocations and subluxations in both of his shoulders.  In July 2004, the RO granted service connection and assigned him a 10% rating for bilateral shoulder subluxation, noting that Mr. Siples's "range of motion was limited by pain which is the major functional impact."  J.A. 65; *see also id.* at 66.  That rating decision became final after Mr. Siples did not appeal.

In June 2017, Mr. Siples filed a motion to revise the 2004 rating decision due to alleged CUE.  He argued that § 4.59 required that "functional loss due to painful motion . . . be rated at least the minimum compensable rating," which he contended entitled him to a 20% rating for each shoulder.  J.A. 26 (emphasis omitted).  The RO and the Board denied the CUE motion.  The Board observed that at the time of Mr. Siples's original rating decision, which was prior to *Burton*, the "VA only applied 38 C.F.R. § 4.59 in cases of arthritis," and Mr. Siples's x-rays were negative for arthritis.  J.A. 36–37.

Mr. Siples appealed to the Veterans Court, which, in relevant part, affirmed the Board by a single-judge memorandum decision.  Quoting our decision in *George v. McDonough*, 991 F.3d 1227, 1234 (Fed. Cir. 2021) (*George I*), *aff'd*, 596 U.S. 740 (2022) (*George II*), the Veterans Court applied the standard that "CUE must be analyzed based on the law as it was *understood at the time* of the original decision and cannot arise from a subsequent change in the law or interpretation thereof to attack a final VA decision."  *Decision*, 2021 WL 5919626, at *2.  The Veterans Court began its analysis by noting that "*Burton* seems to be the first reported case in which a veteran argued that § 4.59 applied outside the arthritis context."  *Id.* Like the *Burton* court, the Veterans Court in Mr. Siples's

case highlighted that § 4.59 began with a sentence seemingly limited to the arthritis context. *Id.* It then reasoned that the *Burton* saga itself—including the opposite conclusions reached by the single-judge and panel decisions, and the Secretary's shift in position during the proceeding—supported the conclusion that § 4.59 was not "undebatably understood to apply to non-arthritis claims in 2004." *Id.* at *2–3.

Finally, the Veterans Court discussed VA General Counsel Precedent Opinion 9-98 but found that it did not change the assessment. *Id.* at *3; *see* VA Op. Gen. Counsel Prec. 9-98, 1998 WL 35275130 (Aug. 14, 1998) (G.C. Prec. 9-98). The subject of G.C. Prec. 9-98 is "Multiple Ratings for Musculoskeletal Disability and Applicability of 38 C.F.R. §§ 4.40, 4.45, and 4.59." The Veterans Court explained that, although the opinion could "be read to indicate that all three provisions apply when rating 'other musculoskeletal disabilities,'" that reading is "by no means compelled." *Decision*, 2021 WL 5919626, at *3. The Veterans Court ultimately "discern[ed] no error in the Board's conclusion that the understanding of § 4.59 in July 2004 did not undebatably compel the RO to assign additional shoulder 20% ratings based on painful motion." *Id.*

Mr. Siples appealed to this court. We have jurisdiction under 38 U.S.C. § 7292.

## DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is limited by statute. *George I*, 991 F.3d at 1233. We may review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by" the Veterans Court. 38 U.S.C. § 7292(a). In doing so, we "shall decide all relevant questions of law." *Id.* § 7292(d)(1). We review assertions of legal error in a Veterans Court decision without deference. *George I*, 991 F.3d at 1233. But we "may

not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case," except "to the extent that an appeal . . . presents a constitutional issue."    38 U.S.C. § 7292(d)(2).

## I.

By statute, a veteran may seek revision of a final decision of the RO or the Board "on the grounds of clear and unmistakable error."    38 U.S.C. § 5109A (the RO); *id.* § 7111 (the Board).  CUE is a "very specific and rare kind of error."  *George II*, 596 U.S. at 747 (quoting 38 C.F.R. § 20.1403(a)); 38 C.F.R. § 3.105(a)(1)(i).[2]  Though the statutes do not define CUE, the regulations and case law reflect certain settled principles that Congress intended to capture when codifying CUE.  *See George II*, 596 U.S. at 746 (holding that Congress "codified and adopted the [CUE] doctrine as it had developed under prior [VA] practice" (cleaned up)).

CUE requires a party to establish three elements.  First, "[e]ither the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied."  *Willsey v. Peake*, 535 F.3d 1368, 1371 (Fed. Cir. 2008) (citation omitted).  Second, the error must be outcome determinative and "undebatable," *id.* (citation omitted), such that "reasonable minds could not differ," 38 C.F.R. § 3.105(a)(1)(i); *see Willsey*, 535 F.3d at 1371,

---

[2]    38 C.F.R. § 20.1403 applies to decisions of the Board, while 38 C.F.R. § 3.105 applies to decisions of the RO.  The language of the two regulations is virtually identical, due in part to an amendment to § 3.105 in 2019 to conform that regulation to § 20.1403.  *See George I*, 991 F.3d at 1234 n.5; *Perciavalle v. McDonough*, 74 F.4th 1374, 1379 n.4 (Fed. Cir. 2023).

1373. Last, "[a] determination that there was CUE must be based on the record and the law that existed at the time of the prior adjudication in question." *Willsey*, 535 F.3d at 1371. Crucial to this appeal, "a legal-based CUE requires a misapplication of the law as it was understood at that time, and cannot arise from a subsequent change in interpretation of law by the agency or judiciary." *George I*, 991 F.3d at 1229; *see* 38 C.F.R. § 3.105(a)(1), (a)(1)(iv).

## II.

Mr. Siples acknowledges that a VA decision cannot be collaterally attacked for CUE based on a subsequent change in law or interpretation thereof. But, he argues, "the *first* time a regulation is interpreted by an authority that binds the VA"—such as the Veterans Court's decision in *Burton* with respect to § 4.59—"that interpretation controls how the law should have been applied in *all prior* [RO] decisions." Appellant's Br. 16 (emphases added); *see also, e.g.*, *id.* at 7. Thus, Mr. Siples asserts the Veterans Court erred in this case by not applying *Burton*'s interpretation of § 4.59 when assessing CUE in the RO's 2004 decision. The government responds in the first instance that *Burton changed* the interpretation of § 4.59, citing the Veterans Court's earlier decisions in *Lichtenfels* and *Ferguson* as support. *See* Appellee's Br. 13. The government then adds that regardless of whether *Burton* is characterized as a "change in interpretation" or a "first interpretation," it may not be relied on to establish CUE because CUE must be based on the body of law that existed at the time of the original decision. *Id.* at 13–18. We agree with the government's latter point and need not decide whether *Burton* represents a change in interpretation or an initial interpretation, for neither may be the basis of CUE.

Mr. Siples's argument cannot be squared with the precedent of both this court and the Supreme Court. In *George I*, we addressed the question of whether a VA decision applying a regulation that is later invalidated can give

rise to CUE. 991 F.3d at 1229. We held that it could not because "CUE must be analyzed based on the law as it was *understood at the time* of the original decision and cannot arise from a subsequent change in the law or interpretation thereof to attack a final VA decision." *Id.* at 1234. The Supreme Court affirmed in *George II*. The Court explained that "authorities dating back to 1928 confirm that a determination that there was 'clear and unmistakable error' must be based on the record and the law *that existed at the time of the prior VA decision*," and thus CUE could not encompass a change in law or a change in interpretation of law. 596 U.S. at 747 (cleaned up). In other words, the historical basis for the change-in-interpretation exception to CUE is that CUE must be based on the body of law extant at the time of the VA's decision. *See also id.* ("[A] subsequent legal change could not [constitute CUE], *because* only the law that existed at the time of the prior adjudication can be considered in this posture." (cleaned up) (emphasis added)); 38 C.F.R. § 3.105(a)(1) ("Final decisions will be accepted by VA as correct with respect to the evidentiary record *and the law that existed at the time of the decision*, in the absence of clear and unmistakable error." (emphasis added)).

Even more recently than *George II*, we addressed the correct standard for CUE in *Perciavalle*.[3] There, we reviewed a splintered decision of the en banc Veterans Court. In relevant part, we assessed whether the concurring opinion of a Veterans Court judge rested on a legally erroneous understanding of CUE. *See Perciavalle*, 74 F.4th at 1380, 1382. The concurrence had reasoned that CUE claims were barred where the alleged legal error "has yet to be identified as erroneous by a court decision or VA

---

[3] In November 2023, we ordered the parties to address by supplemental briefing this court's decision in *Perciavalle*. *See* ECF Nos. 32–34.

publication," such as a General Counsel precedential decision. *Id.* at 1382 (citation omitted). We held that view to be too restrictive because "[i]t is clear from the Supreme Court's recent decision in *George* that the correct CUE inquiry is simply whether the original decision was a 'correct application of a binding regulation' or law, *regardless of later changes in the law or later decisions* by the agency or a court." *Id.* (emphasis added) (quoting *George II*, 596 U.S. at 749). In other words, where the regulation is sufficiently clear on its face, "the language of the regulation itself can establish the existence of CUE." *Id.*; *see, e.g.*, *Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999) (evaluating CUE based on the plain language of a regulation); *Groves v. Peake*, 524 F.3d 1306, 1309–10 (Fed. Cir. 2008) (same). Though *Perciavalle* addressed a different question than the one now before us, its logic and conclusion based on the Supreme Court's decision in *George II* are equally applicable here: CUE must be based on the law at the time, "regardless of . . . later decisions by the agency or a court." *Perciavalle*, 74 F.4th at 1382; *see George II*, 596 U.S. at 747.

Additionally, we note that the Veterans Court has already concluded that neither a first nor a changed interpretation may be relied on to establish CUE, including in a decision that was issued just prior to Congress's codification of CUE and that the Supreme Court relied on in *George II. See* 596 U.S. at 747 (citing *Berger v. Brown*, 10 Vet. App. 166, 170 (1997)). In *Berger*, the Veterans Court rejected the notion that its initial interpretation of a statute and implementing regulation in 1993 could "be the basis of an adjudicative error in [the RO's] 1969" decision, as "a simple recitation of the time sequence [should] make that clear." 10 Vet. App. at 170. The Veterans Court "specifically h[e]ld that opinions from [the Veterans] Court that formulate new interpretations of the law subsequent to an RO decision cannot be the basis of a valid CUE claim," because CUE is concerned with only the body of law that existed at the time of the decision. *Id.*; *see also Lamb v.*

*Peake*, 22 Vet. App. 227, 234–35 (2008).  Our own court, too, recently arrived at the same conclusion, albeit in a non-precedential decision.  *See Steele v. McDonough*, 856 F. App'x 878, 881 (Fed. Cir. 2021) ("[O]ur precedent does not support the view that a new judicial pronouncement can retroactively apply to final decisions of the VA.  Consequently, we need not decide whether [a later decision] was an authoritative statement or a change in interpretation because neither can form the basis for CUE." (citation omitted)).

Mr. Siples retorts that "the first, binding interpretation of the regulation tells us what the law has *always* required."  Appellant's Reply Br. 4 (emphasis added).  But *Burton* did not purport to offer such a definitive interpretation of § 4.59.  *Burton* merely deferred to the Secretary's interpretation of the regulation, as reflected in an October 2004 Fast Letter, which itself post-dated the RO's July 2004 decision.  *See* 25 Vet. App. at 3–5; *see, e.g.*, *id.* at 5 ("[The Secretary's interpretation] is a reasonable interpretation from examining the regulation as a whole . . . .").  Even if Mr. Siples were correct, general principles of finality prohibit a new judicial pronouncement like *Burton*'s from being applied retroactively to collaterally attack a final RO decision on the basis of CUE.  *See George I*, 991 F.3d at 1236–37; *George II*, 596 U.S. at 751.  Mr. Siples argues that his position "does not mean that he is asking for a retroactive application of any law."  Appellant's Suppl. Br. 6.  Yet we fail to see how Mr. Siples is asking for anything but.

Because CUE must be based on the law as understood at the time of the RO's July 2004 decision, Mr. Siples's argument relying on *Burton*'s later-in-time interpretation of § 4.59 fails regardless of whether *Burton* represents an initial or a changed interpretation.

## III.

Our inquiry is not yet over.  We must next address whether the Veterans Court otherwise applied the correct

standard for assessing a legal-based CUE, which turns on whether the RO's 2004 decision was undebatably errone-ous based on § 4.59 as understood based on the law at the time of the decision. *See Willsey*, 535 F.3d at 1373. We agree with the Veterans Court that the understanding of § 4.59 in July 2004 did not undebatably require the RO to assign a higher rating to Mr. Siples's non-arthritic shoul-der disability.

As mentioned above, although a later-in-time interpre-tation of a regulation cannot itself establish CUE, a regu-lation's meaning may be so clear on its face as to compel the existence of CUE in a VA decision that was contrary to that meaning. *See Perciavalle*, 74 F.4th at 1382. To inter-pret a regulation, we look at its plain language and con-sider the terms in accordance with their common meaning. *Lane v. Principi*, 339 F.3d 1331, 1340 (Fed. Cir. 2003). The Veterans Court aptly recognized that although § 4.59 states in general terms that "painful motion" is "productive of disability" and an "actually painful" joint should receive "at least the minimum compensable rating for the joint," the regulation prefaced these statements with the pro-nouncement—in its opening sentence—that "*[w]ith any form of arthritis*, painful motion is an important factor of disability." 38 C.F.R. § 4.59 (emphasis added); *see Deci-sion*, 2021 WL 5919626, at *2. The regulation mentions arthritis again in the third sentence. *See* § 4.59. Of course, "the plain meaning that we seek to discern is the plain meaning of the whole statute or regulation, not of isolated sentences." *Boeing Co. v. Sec'y of Air Force*, 983 F.3d 1321, 1327 (Fed. Cir. 2020) (cleaned up). But given the regula-tion's express references to arthritis, we cannot say that the plain language of § 4.59 as a whole clearly applies to cases beyond those involving arthritic painful motion.

After the RO's July 2004 decision, the Secretary evi-dently determined that § 4.59 should not be limited to ar-thritis. *See Burton*, 25 Vet. App. at 3, 5. We emphasize that we are not called upon in this case to conclusively

determine the correct interpretation of § 4.59. Nor, for that matter, was the *Burton* court, which simply deferred to the Secretary's interpretation as reasonable. Rather, our decision is limited to the conclusion that § 4.59, on its face, did not undebatably apply to non-arthritic conditions.[4]

The Veterans Court in this case also correctly noted the apparent lack of a settled interpretation of § 4.59 prior to *Burton. See Decision*, 2021 WL 5919626, at *3.[5] As mentioned above, unreported decisions of the Veterans Court prior to or around the time of the RO's July 2004 decision diverged on the applicability of § 4.59 to non-arthritis claims. *See supra* Background Section I. And the two reported Veterans Court cases applying § 4.59 to arthritis-based claims suggest that the regulation was understood as being so limited. *See Ferguson*, 1 Vet. App. at 430; *Lichtenfels*, 1 Vet. App. at 488. Furthermore, the *Burton* court itself noted the previous lack of clarity regarding § 4.59, and that lack of clarity was the reason the Veterans Court undertook the case by a panel decision. *See* 25 Vet. App. at 3.[6]

---

[4]    For the avoidance of doubt, our decision today does not disturb or cast doubt upon the Veterans Court's decision deferring to the Secretary's interpretation in *Burton* and that court's directive that, going forward, the VA address the applicability of § 4.59 in non-arthritis claims. *See* 25 Vet. App. at 5.

[5]    At oral argument, Mr. Siples agreed that the understanding of § 4.59 was unsettled in 2004. *See* Oral Arg. at 3:32–55 (available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1528_11072024.mp3).

[6]    While CUE is evaluated without regard to a later decision's impact on the law, *see Perciavalle*, 74 F.4th at 1382, the CUE inquiry does not preclude reference to a

Finally, we agree with the Veterans Court that G.C. Prec. 9-98 does not change the assessment. *See Decision*, 2021 WL 5919626, at *3. This precedential opinion of the VA General Counsel addressed several questions that the opinion characterized as "pertain[ing] to the applicability of 38 C.F.R. §§ 4.40, 4.45, and 4.59 in rating arthritis *and other musculoskeletal disabilities*." G.C. Prec. 9-98, 1998 WL 35275130, at *1 (emphasis added). However, that passing statement did not necessarily mean that each of the three identified regulations applied to "other musculoskeletal disabilities." *Id.* The questions presented and answered by the opinion did not concern whether § 4.59 applied to non-arthritis claims, and the opinion did not purport to provide such an interpretation of § 4.59. *See id.* at *1, *4. Indeed, the opinion repeatedly discusses § 4.59 in the context of arthritis and diagnostic codes related to arthritis. *See, e.g.*, *id.* at *2 ("Given the findings of osteoarthritis (another term for degenerative arthritis), the availability of a separate rating under DC 5003 in light of sections 4.40, 4.45, and 4.59 must be considered. Even if the claimant technically has full range of motion but the motion is inhibited by pain, a compensable rating for arthritis under DC 5003 and section 4.59 would be available."). At best, G.C. Prec. 9-98 contributes to the lack of clarity regarding the applicability of § 4.59 to non-arthritis claims at the time of the RO's July 2004 decision.

In short, CUE must be based on the law at the time of the decision. And at the time of the RO's decision in Mr. Siples's case, § 4.59 was not undebatably understood as applying to cases other than arthritis, nor was it so clear on its face as to compel applicability to non-arthritis claims.

---

later decision to the extent it is informative of the state of the law at the relevant time, as *Burton* is here.

CONCLUSION

We have considered Mr. Siples's remaining arguments and find them unpersuasive. For the reasons explained above, we affirm.

**AFFIRMED**