# United States Court of Appeals for the Federal Circuit

---

**PAT A. HATFIELD,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2023-2280

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 21-5125, Judge Amanda L. Meredith, Judge Joseph L. Falvey, Jr, Judge Michael P. Allen.

---

Decided: May 2, 2025

---

ADAM R. LUCK, GloverLuck, LLP, Dallas, TX, argued for claimant-appellant.

AUGUSTUS JEFFREY GOLDEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY; JONATHAN KRISCH, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before LOURIE, BRYSON, and STARK, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Pat A. Hatfield appeals from a decision of the Court of Appeals for Veterans Claims ("the Veterans Court"). *Hatfield v. McDonough*, 36 Vet. App. 97 (2023). The Veterans Court affirmed a decision of the Board of Veterans' Appeals ("the Board") denying Hatfield's motion asserting clear and unmistakable error ("CUE") to revise a previous decision of the Board rendered in 1980. Because Hatfield has not shown that the 1980 Board committed CUE, we affirm.

BACKGROUND

Archie A. Hatfield ("the veteran") served in the United States Army from March 1944 to May 1945. In 1978, the veteran was diagnosed with Hodgkin's lymphoma, for which he received radiation therapy at a Veterans Administration ("VA") facility. The veteran and his wife, appellant in the instant appeal ("Hatfield"), were told that the radiation therapy had a 95 percent cure rate and that it would enable the veteran to live a normal life for 15 more years. J.A. 65, 67, 71. While the radiation therapy successfully eliminated the veteran's lymphoma, he passed away in early 1979 from pulmonary complications associated with the radiation treatment.

Later that year, Hatfield filed a claim with a Regional Office ("RO") for dependency and indemnity benefits. After the RO denied the claim for failing to establish service connection, Hatfield appealed to the Board, asserting that she was entitled to compensation under 38 U.S.C. § 351 (1976), now codified at § 1151, because the veteran's death was caused by negligent VA medical care. J.A. 67–70; *see* 38 C.F.R. § 3.358(c)(3) (applicable 1980 regulation implementing § 351, which entitled veteran patients to compensation when they were injured from "carelessness,

negligence, lack of proper skill, error in judgment, or similar instances of indicated fault on the part of the Veterans' Administration").

In an October 1980 decision, the Board denied Hatfield's appeal, finding the VA provided adequate medical care and that while the veteran's fatal reaction was unusual, it was a well-recognized complication of radiation therapy. J.A. 46–61. The Veterans Court did not exist at the time, so the Board's decision was final.

Almost 30 years later, in July 2010, Hatfield filed an application to reopen her claim. She asserted that she was entitled to compensation under 38 C.F.R. § 3.361(d)(1)(ii), enacted in 2004, which states that a veteran's decedent has a compensable negligence claim under § 1151 when the veteran dies as the result of VA-administered medical care for which the veteran did not provide informed consent. The Board denied the application, but the Veterans Court reversed, holding that Hatfield was entitled to benefits starting August 1, 2010, because the VA did not obtain the veteran's informed consent—specifically as to whether he understood the risks associated with the radiation therapy—and thus was negligent in administering him treatment. *See Hatfield v. McDonough*, 33 Vet. App. 327, 332, 338–40 (2021); J.A. 102.

Then, in September 2020, Hatfield filed a motion to revise the Board's October 1980 decision, arguing that she was entitled to retroactive benefits from October 1980 to July 2010 because it was CUE for the 1980 Board to have concluded that she did not raise a compensable negligence claim under 38 U.S.C. § 351. J.A. 38–44. Specifically, Hatfield contended that the 1980 Board committed CUE by failing to consider and apply 38 U.S.C. § 4131—a provision in place at the time relating to informed consent—in analyzing whether the VA's treatment of the veteran amounted to a compensable claim. In Hatfield's view, because § 4131 provided that the VA must obtain a patient's

written informed consent before administering treatment—and as previously found there was nothing in the record establishing that the VA had done so—the 1980 Board committed CUE because the VA was undebatably negligent in its treatment of the veteran.

In a 2021 decision, the Board denied Hatfield's motion to revise, holding that the 1980 Board did not commit CUE and therefore that Hatfield was not entitled to retroactive benefits from October 1980 to July 2010. J.A. 30–37. On appeal, the Veterans Court affirmed the Board's decision because in 1980 there was no suggestion in the statutory text or legislative and regulatory histories of either § 351 or § 4131 that the VA's failure to obtain a patient's informed consent before administering treatment amounted to a compensable negligence claim. *See Hatfield*, 36 Vet. App. at 116.

Hatfield timely appealed to this court. We have jurisdiction under 38 U.S.C. § 7292(a).

## DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is prescribed by statute. *Scott v. Wilkie*, 920 F.3d 1375, 1377 (Fed. Cir. 2019). We have jurisdiction to "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof" and "interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). We review claims of legal error in a decision of the Veterans Court without deference. *George v. McDonough*, 991 F.3d 1227, 1233 (Fed. Cir. 2021), *aff'd*, 596 U.S. 740 (2022).

A motion for revision based on CUE is a statutorily authorized collateral attack on a final decision of the Board that, if successful, results in a "reversed or revised" decision having "the same effect as if [it] had been made on the date of the [original] decision." *See* 38 U.S.C. § 7111(a)–(b). CUE is a "very specific and rare type of error," in which a

claimant must demonstrate that "[e]ither the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied." *George*, 991 F.3d at 1233 (cleaned up). Furthermore, the error must be outcome determinative and "undebatable," such that "reasonable minds could not differ." *Siples v. Collins*, 127 F.4th 1325, 1330 (Fed. Cir. 2025). "[A] determination that there was CUE must be based on the record and the law that existed at the time of the prior adjudication in question." *Id.*

I

Hatfield raises the same argument here as she did before the Veterans Court. She contends that in 1980, the VA's failure to adhere to the informed consent requirements of 38 U.S.C. § 4131 undebatably amounted to a compensable negligence claim under 38 U.S.C. § 351. And because the record is devoid of evidence that the VA did so, the 1980 Board committed CUE. We disagree.

A

Our analysis begins with the text of the relevant statutory provisions. In 1980, § 351 provided in relevant part:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment . . . awarded under any of the laws administered by the Veterans' Administration . . . *and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded.*

38 U.S.C. § 351 (1976) (emphasis added).

Section 4131 in turn provided:

> The Administrator . . . shall prescribe regulations establishing procedures to ensure that . . . to the maximum extent practicable, *all patient care furnished under this title shall be carried out only with the full and informed consent of the patient or subject or, in appropriate cases, a representative thereof.*

38 U.S.C. § 4131 (1976) (emphasis added).

As is evident, the plain language of each statute does not cross-reference the other. The two statutes therefore do not suggest, let alone undebatably so, that the VA's failure to adhere to § 4131's requirement of obtaining a patient's informed consent amounts to a compensable negligence claim under § 351. *See Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 981 F.3d 1360, 1385 (Fed. Cir. 2020) (en banc) (Congress's silence is "powerful evidence" of its intent not to act).

## B

The legislative and regulatory history of the two statutes supports that conclusion.

Section 351 was derived from the World War Veterans' Act, 1924, Pub. L. No. 68-242, § 213, 43 Stat. 607, 623–24. *Gardner v. Brown*, 5 F.3d 1456, 1463 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). The relevant statutory language was repealed in 1933, re-enacted in 1934, and codified at § 351 in 1958.[1] *Gardner*, 5 F.3d at 1462 n.8. The only time the concept of consent was mentioned in the promulgation of what would become § 351 was during a hearing before the House Committee on World War Veterans' Legislation, when the Director of the Veterans Bureau and the

---

[1]    Between 1958 and 1976, Congress made several minor changes to § 351, but they are immaterial to this case.

Chairman of the committee engaged in the following collo-
quy fleshing out situations in which compensation would
be payable:

> Director: In the hospital, *at the patient's consent,* he
> may undergo a certain surgical operation, with the
> hope, on the best advice available, that it will over-
> come some disability, but instead of doing that it
> goes in the other direction. Now, he may have a
> considerable minor disability due to his service, but
> at the same time he finds himself totally disabled,
> and the bureau under the existing law has no way
> of compensating him.
>
> Chairman: [Compensation] might come from a
> [procedure] *done at his request*?
>
> Director: That is true.

*World War Veterans' Legislation, Part 1: Hearings on H.R.
7320 Before the House Comm. on World War Veterans'
Legis.*, 68th Cong., 114 (1924) (emphases added).

At most, that dialogue suggests that the Veterans Bu-
reau may have considered consent to be relevant under
§ 351's predecessor and that that consideration was put be-
fore Congress. What it does not do, however, is resolve the
issue we are concerned with here: whether it is undebata-
ble that Congress or the VA intended that the *failure* to
obtain a patient's informed consent amounted to a compen-
sable negligence claim.[2]

---

[2]    We also observe that at least through the 1950s,
medical treatment administered without a patient's in-
formed consent was uniformly considered across the states
to be a battery, an intentional tort, as opposed to negli-
gence. E. Haavi Morreim, *Medical Research Litigation and
Malpractice Tort Doctrines: Courts on a Learning Curve,*

In 1961, the VA promulgated 38 C.F.R. § 3.358(c), the implementing regulation for § 351, requiring claimants to establish that they were injured as the result of "careless-ness, negligence, lack of proper skill, error in judgment, or similar instances of indicated fault on the part of the Vet-erans' Administration" to have a compensable claim under § 351.³ 26 Fed. Reg. 1561, 1590–91 (Feb. 24, 1961). As is clear, the concept of informed consent was not mentioned in the text of the regulation.

Accordingly, there is no suggestion in § 351's pre-1980 legislative and regulatory history that the VA's failure to obtain a patient's informed consent amounted to a compen-sable negligence claim for injuries sustained as a result of VA-administered treatment.

We next turn to the legislative and regulatory history of § 4131. Congress enacted § 4131 as part of the Veterans

---

4 HOUS. J. HEALTH L. & POL'Y 1, 53 (2003). To be sure, state common law does not define the standards of care the VA is required to adhere to in administering healthcare. *See Feres v. United States*, 340 U.S. 135, 143 (1950). Such standards are defined by Congress in the Veterans Code. Nevertheless, that no U.S. jurisdiction considered the fail-ure to obtain a patient's informed consent to be negligence when § 351 was enacted supports the notion that Congress did not either.

³    In *Gardner*, we held, and the Supreme Court af-firmed, that 38 C.F.R. § 3.358(c)'s "negligence . . . or simi-lar instances of indicated fault" requirement was inconsistent with § 351's successor statute (§ 1151). 5 F.3d at 1463. Nevertheless, because 38 C.F.R. § 3.358(c) was good law at the time of the 1980 Board decision, it is rele-vant to our analysis because a legal-based CUE inquiry ex-amines the law in place at the time of the relevant Board decision, even if the law at that time is later changed by a judicial decision. *See George*, 991 F.3d at 1238.

Omnibus Health Care Act of 1976.  Pub. L. No. 94-581, § 111(a), 90 Stat. 2842, 2849–50.  The Act did not add or amend any provisions relating to compensation, but rather solely addressed the VA's administration of healthcare. *See Kirkpatrick v. Principi*, 327 F.3d 1375, 1384 (Fed. Cir. 2003) ("[T]he language and statutory background of the [healthcare] provisions . . . are quite different from the language and background of section[] [351].").

Indeed, at a hearing before the Subcommittee on Health and Hospitals, when discussing the importance of obtaining a veteran patient's informed consent, a member of the subcommittee and a testifying VA physician touched on the topics of negligence and compensation:

> Member:  In the non-VA sector . . . [a] physician who fails to obtain the informed consent of the patient before operating is subjecting himself or herself to potential malpractice action, of course, *and this possibility of legal liability, at least in theory, tends to make the physician observe the rules.  But in the Federal context, including the VA, physicians are not liable for negligence under the same circumstances, and under Federal law a physician in a VA hospital is not personally liable for malpractice.*  Does not this suggest that standards for informed consent should be very stringent in the VA hospital system since the theoretical constraint of malpractice action is absent?

> Physician:  Absolutely . . . *because of the different medical-legal relationship between the veteran patient and his physicians from that of a private patient, we must exercise even greater diligence to avoid abridgment of the rights of the veteran patient.*

*Veterans Omnibus Health Care Act of 1976, Part 2: Hearing Before the Subcomm. on Health and Hosps., Comm. on*

*Veterans' Affs.* Senate, 94th Cong. 601 (1976) (emphases added).

One could construe that dialogue to suggest that Congress intended a VA physician's failure to adhere to the informed consent requirements of § 4131 to subject the VA to a "malpractice action"—*i.e.*, a compensable claim for negligence under § 351—similar to the private sector. *See id.* But an equally plausible construction is that because the VA physician-patient relationship is materially "different" from that of a typical private physician-patient relationship, the onus is entirely on *the VA* "to avoid abridgment of the rights of the veteran patient." *See id.*

That latter construction is embodied in 38 C.F.R. § 17.34, § 4131's implementing regulation. Section 17.34 did not make any mention of VA benefits compensation or negligence. 45 Fed. Reg. 6933, 6935 (Jan. 31, 1980). On the contrary, subsection (d) of § 17.34 provided: "*The Chief Medical Director* will establish an appropriate method for the periodic review of patients' consents in order *to insure compliance with this section* and other regulations and to maintain the protection of the patients' rights. (38 U.S.C. § 4131)." 38 C.F.R. § 17.34 (1980). (emphases added). That § 17.34(d) states that the Chief Medical Director—a position housed within the VA—will "insure compliance" with § 4131, suggests that the VA construed § 4131 to be a self-governing statute, and thus the VA's failure to adhere to § 4131's requirements did not amount to a compensable negligence claim under § 351. *Cf. Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." (citation omitted)); *see Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944) (an agency's interpretations "made in pursuance of official duty . . . constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance").

Only in the early 2000s did the law link the VA's failure to adhere to § 4131 and compensability under § 351.[4]  In 2002, the VA proffered 38 C.F.R. § 3.361(d)(1)(ii), which it described as a "*propos[al] to include* a requirement that consent be informed, in accordance with 38 CFR 17.32," else a patient who is injured or dies as the result of VA medical care could bring a claim for negligence under § 1151, § 351's successor statute.  67 Fed. Reg. 76322, 76323 (Dec. 12, 2002) (emphasis added).  Present-day 38 C.F.R. § 17.32 is the amended version of § 17.34, § 4131's implementing regulation.  38 C.F.R. § 3.361(d)(1)(ii)'s forward-looking language—*i.e.*, a "propos[al] to include"—suggests that the VA believed the proffered regulation to be a departure from how the compensability and informed consent provisions previously operated, and thus that the law in 2002 did not permit a compensable negligence claim under § 351 when the VA failed to adhere to § 4131.[5]  *Skidmore*, 323 U.S. at 134, 139–40.

\* \* \*

In sum, none of the text, legislative history, or regulatory history of  38 U.S.C. § 351  and  38 U.S.C. § 4131

---

[4]    Although CUE is evaluated without regard to law that post-dates the relevant Board decision, "the CUE inquiry does not preclude reference" to later enacted law "to the extent it is informative of the state of the law at the relevant time."  *Siples*, 127 F.4th at 1333 n.6 (Fed. Cir. 2025).  Hatfield acknowledged as much at oral argument.  Oral Arg. at 11:35–11:53, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-2280_03052025.mp3.

[5]    Section 3.361(d)(1)(ii) was ultimately enacted in 2004, 69 Fed. Reg. 46426, 46432 (Aug. 3, 2004), and as noted above served as the basis for Hatfield's successful motion to reopen her claim, entitling her to compensation from August 1, 2010 to the present.

establishes that it is undebatable that, in 1980, the VA's failure to obtain a patient's informed consent before administering medical treatment amounted to a compensable negligence claim.

## C

Hatfield contends that the above approach in analyzing this case—*i.e.*, looking for an express link between § 351 and § 4131—is misguided.  Instead, she asserts that the correct approach is to read the provisions together as part of the "overall statutory scheme" for providing compensation to veterans injured from negligent VA medical care. Hatfield Br. 18 (citing *King v. Burwell*, 576 U.S. 473, 485 (2015)).  Under Hatfield's approach, the analysis should go as follows: (1) in 1980, § 351 provided the mechanism for receiving compensation from the VA when a veteran was injured and the VA did not adhere to its prescribed standards of care; (2) § 4131's informed consent requirements were one such standard of care; (3) the VA breached that standard here by not obtaining the veteran's informed consent, and thus the 1980 Board committed CUE by concluding that Hatfield did not have a compensable negligence claim.

But that is not the law.  If the issue before us were simply whether, applying ordinary principles of statutory construction, violation of § 4131 in 1980 amounted to a compensable claim under § 351, Hatfield's arguments might be persuasive.  But we are dealing with a fundamentally different issue in this case: construction through the lens of CUE.  That § 351 and § 4131 were in place at the same time and could conceivably be read together, without more, is not enough to establish that they undebatably

must be.[6]  And as explained above, the separateness of § 351 and § 4131 in 1980 is reinforced by 38 C.F.R. § 17.34(d), which suggests that violation of § 4131 does not provide an injured veteran a private cause of action for negligence. *Touche*, 442 U.S. at 568.

## CONCLUSION

We have considered Hatfield's remaining arguments and find them unpersuasive.  For the reasons provided, we affirm the Veteran's Court's decision that the 1980 Board did not commit CUE.

## AFFIRMED

---

[6]   We emphasize that our decision today should not be construed as requiring an express legislative or regulatory statement to read two separate provisions together in the context of a legal-based CUE inquiry.  The consequences of a provision's silence must be analyzed on a case-by-case basis.